COMMONWEALTH vs. JOSEPH L. SALVATI
(and two companion cases[1]).

Suffolk. February 7, 1995. - June 12, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* New trial, Disclosure of evidence, Disclosure of identity of informer. *Due Process of Law,* Disclosure of evidence.

Discussion of claims under *Brady* v. *Maryland,* 373 U.S. 83 (1963), of violation of due process rights, by reason of the prosecutor's alleged suppression of evidence favorable to the defense, as would have been applicable to a criminal trial that took place in 1968. [501-503]

Any failure of the prosecution to disclose a certain police report to defendants at their 1968 trial for murder did not require that a new trial be granted on the basis of the holding of *Brady* v. *Maryland,* 373 U.S. 83 (1963), where the information in the report did not materially aid the defendants' cases, and, further, was cumulative of evidence presented, in part by the defendants, at trial. [503-505]

Criminal defendants did not demonstrate that the disclosure of the identity of a police informant or the contents of his communication to police was relevant or helpful to the defense or essential to a fair determination of the case in accordance with *Roviaro* v. *United States,* 353 U.S. 53 (1957), so as to warrant reversal of the defendants' convictions for the prosecution's nondisclosure of the information. [505-506]

Criminal defendants did not demonstrate that an undisclosed informant's statements constituted newly discovered evidence such as would entitle the defendants to a new trial. [506-507]

INDICTMENTS found and returned in the Superior Court Department on October 25, 1967.

Motions for a new trial, filed on August 23, 1993, September 27, 1993, and October 20, 1993, respectively, were heard by *Robert W. Banks,* J.

---

[1]The other defendants are Louis Grieco and Peter Joseph Limone.

*Victor J. Garo* (*Anthony R. Pelusi, Jr.*, with him) for Joseph Salvati.

*John Cavicchi* for Louis Grieco.

*Oscar B. Goodman,* of Nevada (*Robert L. Sheketoff* with him) for Peter Joseph Limone.

*Robert McKenna,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. On July 31, 1968, a jury found Joseph L. Salvati and Peter Joseph Limone guilty as accessories before the fact in the murder of Edward Deegan, and of conspiracy to murder Edward Deegan and Anthony J. Stathopoulos. The same jury found Louis Grieco guilty of murder in the first degree and of two counts of conspiracy to murder. A complete summary of the evidence is contained in *Commonwealth* v. *French,* 357 Mass. 356 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972), where this court affirmed those convictions. There was evidence from which the jury could have concluded that Limone agreed to pay for the killing of Deegan and Stathopoulos, Salvati participated in the planning of the murder, and Grieco was one of the shooters. Each of the defendants' subsequent motions for a new trial were denied. The defendants then filed petitions in the county court, pursuant to G. L. c. 278, § 33E (1992 ed.), for leave to appeal the denial of their motions for a new trial. These petitions were allowed, "but only with respect to the alleged failure of the Commonwealth to disclose before trial the existence of [a police report] (and the alleged existence of an informant) and the significance, if any, of such failure," and consolidated for briefing and oral argument before the full court. Therefore, our opinion only addresses this limited issue.

In instances where, as here, a judge hearing a motion for new trial was not the trial judge, "we regard ourselves in as good a position as the motion judge to assess the trial record." *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986). Moreover, when a new trial claim is constitutionally based, as in the instant cases, "this court will exercise its own judgment on the ultimate factual as well as legal conclusions."

*Commonwealth* v. *Tucceri*, 412 Mass. 401, 409 (1992). We conclude that there was no error.

The defendants contend that, before trial, the Commonwealth suppressed a police report which contained statements made by an informant concerning events observed by the informant on the night of Deegan's murder.[2] All three defendants argue that the denial of their motions for a new trial was erroneous because the Commonwealth "suppressed" this police report in violation of their due process rights under the Fourteenth Amendment to the United States Constitution, see *Brady* v. *Maryland*, 373 U.S. 83 (1963).[3] Salvati also argues that the denial was erroneous because the Commonwealth failed to provide the defendants with the informant's identity and the contents of the informant's statement before trial as required by *Roviaro* v. *United States*, 353 U.S. 53 (1957).

1. Brady *claims.* In *Brady*, *supra*, the Supreme Court held that "suppression by [a] prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.[4] The Court's holding, read literally, applies only to specific evidence that a defendant has asked the prosecutor to

___

[2]The report states in pertinent part: "I received information from Capt. Renfrew that [an] informant of his had contacted him and told him that [Wilfred R.] French had received a telephone call at the Ebb Tide at 9 P.M. on 3-12-65 and after a short conversation he had left the cafe with the following men[:] Joseph [Baron], Ronald Cassesso, Vincent Flemmi, Francis Imbuglia, Romeo Martin, Nicky Femia and a man by the name of Freddi who is about 40 years old and said to be a 'Strongarm.' They are said to have returned at about 11 P.M. and Martin was alleged to have said to French, 'We nailed him.'"

[3]The defendants' trial took place in 1968, and therefore, we look to the law that existed at that time to assess the defendants' claims.

[4]In *Brady* v. *Maryland*, 373 U.S. 83 (1963), the defendant had asked the prosecutor for extrajudicial statements made by the defendant's accomplice. However, when the prosecutor provided the defendant with some of the accomplice's statements, he failed to provide the defendant with a confession whereby the accomplice admitted the actual homicide. The Court concluded that the defendant's due process rights had been violated. Because the defendant admitted his participation in the crime, the Court

disclose. Case law, existing at the time of the defendants' trial, was inconclusive as to whether a defense request is essential to the operation of the *Brady* rule, and if so, what type of request is required. See *Giles* v. *Maryland,* 386 U.S. 66, 73 (1967) (remanding for new trial despite absence of pretrial request by defendant of suppressed evidence); *Barbee* v. *Warden, Md. Penitentiary,* 331 F.2d 842, 845-846 (4th Cir. 1964) (refusing to focus on astuteness of counsel, but rather on essential fairness of procedure). In this case, the defendants filed requests for exculpatory evidence,[5] and so we focus our discussion on the concepts of suppression, favorability, and materiality. To constitute "suppression," the government must at one time have possessed the evidence in question or at least had access to the evidence. See *Commonwealth* v. *Earl,* 362 Mass. 11, 15-17 (1972); *Barbee* v. *Warden, Md. Penitentiary, supra* at 846. Here, although it is clear from the record that the police report did exist at the time of trial, it is unclear whether the prosecutor actually had the police report.[6] See *Commonwealth* v. *Earl, supra* at 14-16 (evidence not unconstitutionally withheld under *Brady*). However, even assuming that the prosecutor did "suppress" the police report, suppression by itself does not mandate a new trial.

---

held that the entire trial was not lacking in due process and that only the issue of punishment needed to be considered on retrial.

[5]Salvati requested exculpatory evidence that could be used for impeachment purposes and defined exculpatory evidence as "any evidence which would be favorable to the defendant, including . . . a statement by a witness that [Salvati] was not an individual that was seen at the scene of the crime." We conclude that this motion for exculpatory evidence did not encompass the informant's statements contained in the police report given that the statements do not address individuals seen at the scene of the crime, but rather individuals seen with Baron at the Ebb Tide.

[6]The motion judge made no findings whether the prosecutor had the police report. However, given that the suppression of favorable documents by other government agents has been chargeable to the prosecutor, see *Barbee* v. *Warden, Md. Penitentiary,* 331 F.2d 842, 846 (4th Cir. 1964) (suppression of favorable ballistics report known to police chargeable to prosecutor), we shall assume that the prosecutor had access to the evidence.

As of 1968, the Supreme Court had explicitly declined to resolve "whether the prosecution's constitutional duty to disclose extend[ed] to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial." *Giles* v. *Maryland, supra* at 74. Therefore, at the time of the defendants' trial, the Supreme Court had yet to provide substantial guidance for applying the materiality concept required by *Brady*.

In 1971 this court stated that a prosecutor's duty to disclose under *Brady* "must be measured by the directness of the materiality of the item of evidence in question to the defence taken together with the sheer volume of all the evidence in the hands of the prosecution." *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 318 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). Although this court has conceded that it was obviously improper to suppress "significant and material evidence favorable to a criminal defendant, where a defence request reasonably directs the prosecution's attention to it," it stated that "[m]uch, however, depends on the particular circumstances and the nature, importance, and relevance of the allegedly suppressed evidence." *Commonwealth* v. *Cassesso*, 360 Mass. 570, 578 n.5 (1971). *Cassesso* involved an appeal from the denial of a motion for a new trial of one of the other defendants whose conviction arose from the Deegan murder. There the court, in commenting on the duty of the Commonwealth to disclose another police report, noted that the trial transcript contained 7,555 pages. *Id.* at 577. In *Commonwealth* v. *French*, 357 Mass. 356, 399 A-2 (1970), the court concluded that the trial judge was not required to grant motions for inspection of exculpatory evidence in the absence of greater specification of the areas of the desired inquiry.

Measured against this background and the standards of the day, any failure of the prosecution to disclose the report does not require that we grant a new trial. The defendants suggested at trial that Joseph Baron, the Commonwealth's

key witness, had implicated certain individuals, including the defendants, instead of the true perpetrators of the crimes. Therefore, the defendants argue that the informant's statements support this substitution defense because the informant did not name any of the defendants as being men who had left and returned to the Ebb Tide with Baron. The defendants contend that the information contained in the report is consistent with this theory, and therefore, favorable to the defendants. Even if this is so, the information in the police report is also consistent with the Commonwealth's case. For example, there was no evidence introduced that either Limone or Grieco were ever at the Ebb Tide on the night of the murder. Limone's primary criminal act was soliciting "the hit" on Deegan and Grieco was not at the Ebb Tide with Baron, but rather in an alley waiting for Deegan. Moreover, Baron testified that, when he left the Ebb Tide, Salvati was tending to an automobile in the Ebb Tide parking lot. Therefore, under either version of the events the informant would not have seen Salvati, Limone, or Grieco leave the Ebb Tide with Baron. Furthermore, as found by the motion judge, the fact that the informant saw Baron leave the Ebb Tide at the same time as six other individuals does not "conclusively establish a common destination or scheme" between those individuals given the possibility that Baron left with some individuals who did not participate in the crimes. This is especially so when it is taken into consideration that approximately 500 people were in the Ebb Tide that night. Moreover, the fact that the informant did not see Salvati return to the Ebb Tide with Baron is consistent with Baron's testimony that Salvati was hiding "the stuff" in a nearby field at that time. Therefore, the informant's statements are not inherently inconsistent with Baron's testimony. Additionally the information in the report is cumulative of evidence presented at trial. For example, the police report indicates that the informant alleged that seven men had left and returned to the Ebb Tide with Baron. During direct examination, Baron independently named two of these seven men as being with him at the Ebb Tide on the night of the murder

and as being participants in the crime. However, during cross-examination, Baron was specifically questioned about four other men named by the informant in the police report. We conclude, therefore, that the information contained in the report was available to trial counsel and used by at least one defendant to cross-examine Baron in order to impeach his credibility. Thus the motion judge's denial of the defendants' motions based on alleged *Brady* violations was not erroneous because the information in the police report was merely cumulative evidence that did not materially aid the defendants on the issue of guilt or punishment.

2. Roviaro *claims*. In *Roviaro* v. *United States*, 353 U.S. 53 (1957), the Supreme Court stated: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the information must be disclosed to the defendant or the case must be dismissed. *Id.* at 60-61. The Court acknowledged, however, that the determination whether disclosure is required will depend on the particular circumstances of each case. *Id.* at 62. In *Roviaro*, the defendant had made specific, repeated requests for the disclosure of the identity of a confidential informant who "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." *Id.* at 55. Moreover, the informant was the sole participant in the crime, other than the accused, and therefore, the only nongovernment witness to the crime. *Id.* at 64. In these circumstances, the informant's possible testimony was highly relevant. Therefore, the Supreme Court held that it was reversible error not to disclose the confidential informant's identity, given the defendant's repeated requests for the information. *Id.* at 64-65. Cf. *McCray* v. *Illinois*, 386 U.S. 300, 309-311 (1967) (*Roviaro* illustrative of Court's unwillingness to impose absolute rule requiring disclosure of informant's identity).

As previously stated, the informant's report did not materially aid any of the defendants on the issue of guilt or punishment. Additionally, there is nothing in the record to indicate that the informant participated in the crime. Instead, the informant merely observed isolated events that any other patron at the Ebb Tide could have observed. Given that the record is void of any indication that law enforcement officials had an agreement with or directed the informant to disclose his or her observations to law enforcement officials, we conclude that Salvati failed "to develop the criteria of *Roviaro* necessitating disclosure." *Rugendorf* v. *United States*, 376 U.S. 528, 535 (1964) (petitioner failed to show disclosure necessary for defense). *Commonwealth* v. *Lugo*, 406 Mass. 565, 572 (1990) (discussing *Roviaro* and subsequent cases; disclosure required when informant actively participates in crime). Furthermore, we agree with the motion judge's characterization of the informant as a "tipster or citizen witness" rather than a confidential informant, see *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 408 (1989) (distinguishing between confidential informant and citizen tipster), and we conclude that the nondisclosure of the tipster's identity or the contents of the tipster's statements did not constitute reversible error.

3. *Other issues.* The defendants contend, in the alternative, that their motions for a new trial should not have been denied because the informant's statements constitute newly discovered evidence. We do not agree. "A defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction. . . . The evidence said to be new not only must be material and credible . . . but also must carry a measure of strength in support of the defendant's position. . . . Thus, newly discovered evidence that is cumulative of evidence admitted at trial tends to carry less weight than new evidence that is different in kind. . . . Moreover, the judge must find there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." *Commonwealth* v.

*Scanlon*, 412 Mass. 664, 679-680 (1992), quoting *Commonwealth* v. *Grace*, 397 Mass. 303, 305-306 (1986). To be newly discovered evidence, the evidence must have been unknown to the defendant and not reasonably discoverable at the time of trial. *Id.* at 306. From the cross-examination of Baron it can be inferred that defense counsel had access to the police report in question, prior to trial.[7] Given that the materiality standard for a new trial based on suppressed evidence is more stringent than the standard for a new trial based on newly discovered evidence and that we have already stated that the statements in question did not meet the materiality standards as set forth in *Brady* v. *Maryland*, 373 U.S. 83 (1963), we conclude that there was no error.

For the aforementioned reasons, we affirm the denial of the defendants' motions for a new trial.

*So ordered.*

---

[7]Moreover, if Salvati truly believed that the informant's identity should have been disclosed or that the informant possessed material information relevant and helpful to his defense, Salvati should have accepted, rather than objected to, the motion judge's proposal to perform an interview with the informant consistent with *Commonwealth* v. *Amral*, 407 Mass. 511, 522-523 (1990), if the informant was in fact available.