## COMMONWEALTH *vs.* PHILLIP JONES.

Suffolk. September 8, 2000. - November 16, 2000.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & SOSMAN, JJ.

*Accessory and Principal. Homicide. Evidence,* Prior inconsistent statement. *Practice, Criminal,* Argument by prosecutor, New trial, Capital case.

Evidence at the trial of an indictment alleging accessory before the fact to murder in the first degree was sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant provided a gun to another and, sharing the other's specific intent to shoot the victim, ordered him to shoot: the judge correctly denied the defendant's motion for a required finding of not guilty. [625-626]

Where the record of a criminal trial did not demonstrate unequivocally that a witness had adopted a prior inconsistent statement, the judge did not err in refusing to instruct the jury that adopted prior inconsistent statements acquire full probative value. [626-628]

No substantial likelihood of a miscarriage of justice arose from the prosecutor's closing argument at a criminal trial. [628-630]

At the trial of an indictment alleging accessory before the fact to murder in the first degree, the judge correctly instructed the jury as to the elements of murder, manslaughter, and self-defense, and that, if the jury found that the principal had committed manslaughter, or had used excessive force in self-defense, the defendant must be acquitted; any asserted error in those aspects of the instructions was not prejudicial. [630-632]

No constitutional right of a criminal defendant was infringed by the judge's denial of a motion for a new trial without hearing testimony from a witness who by affidavit had recanted his trial testimony, nor did the affidavit alone raise a substantial issue warranting an evidentiary hearing [632-633]; and the judge did not abuse her discretion in denying the motion [633-634].

INDICTMENT found and returned in the Superior Court Department on November 1, 1995.

The case was tried before *Robert W. Banks,* J., and a motion for a new trial, filed on January 11, 1999, was heard by *Elizabeth B. Donovan,* J.

*James A. Couture* for the defendant.

*Cathryn A. Neaves,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. A jury found the defendant guilty of being an accessory before the fact to murder in the first degree committed with deliberate premeditation. He contends on appeal that (1) the trial judge erred in denying his motion for a required finding of not guilty; (2) the judge erred by failing to instruct the jury on the effect of prior inconsistent statements adopted by a witness as true; (3) the prosecutor's closing argument was prejudicial; and (4) the judge erroneously instructed the jury concerning manslaughter. He requests that we exercise our authority under G. L. c. 278, § 33E, to reduce his conviction.[1] In addition, the defendant appeals from the denial of his motion for a new trial based on newly discovered evidence, as well as from the denial of his request for an evidentiary hearing on that motion. The two appeals have been consolidated. We affirm the conviction and the denial of the motion for a new trial. We decline to exercise our authority under G. L. c. 278, § 33E, in favor of the defendant.

1. *Background.* We recite the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised. On September 5, 1995, two Boston police officers responded to a radio dispatch to go to Navillus Terrace in the Dorchester section of Boston. They found the victim lying motionless on the street, and discovered a knife nearby on the ground. The victim died from a single gunshot wound.

There was evidence that the defendant was the leader of a gang, the "Navillus Terrace Lions" (Lions). The defendant was angry with the victim because the victim owed him money. The defendant also believed that the victim had joined a rival gang and arranged the shooting of Kevin Scott, a member of the Lions.

Corey Walker, a witness for the Commonwealth, testified that, while he was incarcerated at the Suffolk County house of correction at South Bay, he learned about the Lions from his cellmate, Willie Scott, also a Lions member and the brother of Kevin Scott. While in jail Walker also learned of the shooting of Kevin Scott, and the victim's alleged involvement in the

---

[1] A defendant convicted as an accessory before the fact to murder in the first degree is entitled to review under G. L. c. 278, § 33E, because it is a capital crime with the same punishment as that for murder in the first degree. *Commonwealth* v. *Francis, ante* 353, 354 n.1 (2000), and cases cited. See note 3, *infra.*

shooting. Shortly after Walker was released, he became a member of the Lions. The defendant discussed with Walker his problems concerning the victim.

The day the victim was shot, Walker was on his way to work when he encountered Kevin and Willie Scott. The three men decided to take the day off. They later met the victim while on their way to Navillus Terrace. The Scott brothers and Walker confronted the victim about his alleged involvement in Kevin Scott's shooting, telling him that the defendant thought the victim had arranged it. The four men argued as they proceeded to Navillus Terrace. When they reached the Terrace they found the defendant on his front porch. The victim and the defendant began arguing. There was evidence that the defendant retrieved from his apartment a .357 magnum revolver that he gave to Walker. Shortly afterward Walker shot the victim in circumstances we describe later.[2]

2. *Motion for a required finding of not guilty.* The defendant challenges the denial of his motion for a required finding of not guilty, asserting that the Commonwealth's evidence was insufficient to permit the jury to conclude that each element of the offense had been proved beyond a reasonable doubt. There was no error. In reviewing the judge's denial of the motion we consider the evidence presented up to the time of the motion, in its light most favorable to the Commonwealth, and decide whether the evidence is "sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). We "must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore, supra* at 677-678. In so doing, we resolve all questions of credibility in favor of the Commonwealth. *Cramer* v. *Commonwealth*, 419 Mass. 106, 110 (1994), and cases cited. That some of the evidence may be contradictory or equivocal is not relevant to our determination. *Commonwealth* v. *Christian*, 430 Mass. 552, 555 (2000).

---

[2]Approximately five weeks after the shooting Walker was arrested and provided a tape-recorded statement concerning his involvement in the shooting, as well as that of the defendant. Walker later pleaded guilty to murder in the second degree, and to intimidating and making threats against a witness, Kevin Scott.

In order to obtain a conviction under G. L. c. 274, § 2, the Commonwealth was required to establish beyond a reasonable doubt that the defendant "associate[d] himself with the venture . . . participate[d] in it as in something that he wishe[d] to bring about . . . [and sought] by his action to make it succeed." *Commonwealth* v. *Stout*, 356 Mass. 237, 241 (1969).[3] The Commonwealth presented evidence showing that the victim was swearing and arguing with the defendant and others in front of the defendant's house, and that witnesses knew that he was armed with a knife. As the victim stood yelling, the defendant told the victim, "I can't stand you, man. I always wanted to do something to you." The defendant then called Walker up to his porch, handed him the gun (a .357 magnum) and told him this "will do the job," and to "do what you got to do" to make the victim stop arguing. Walker returned to the vicinity of the victim with the gun under his shirt and waited for the defendant to indicate when to shoot. The defendant first gave a negative shake of his head, because his neighbor was on her porch across the street. Shortly afterward, when his neighbor had left, he gave an affirmative nod, whereupon Walker shot the victim and fled. A few days later, the defendant confided to Steven Wilcox that he had provided Walker with a gun, had told him to kill the victim, and had nodded at Walker when it was time to shoot.

This evidence would permit a rational trier of fact to conclude that the defendant ordered Walker to shoot the victim, having provided him with the weapon and instructed him when it should be fired. It would also permit a jury to conclude that Walker acted with deliberate premeditation and that the defendant shared Walker's mental state, a specific intent to shoot the victim: Walker took the gun offered by the defendant, listened to the defendant's instructions, returned to the victim, and, on the defendant's signal, shot the victim.

3. *Jury instructions regarding prior inconsistent statements by a witness.* The defendant asserts that the judge gave inadequate instructions on the effect of Walker's prior inconsis-

---

[3]General Laws c. 274, § 2, states: "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon."

tent statements adopted by him at the trial as true.[4] The defendant claims that Walker, while testifying, adopted as true a prior inconsistent statement he had made to the police in which he had said that, during his confrontation with the victim, he feared for his life. This statement is significant because it could have been interpreted by the jury as evidence that the shooting was manslaughter or self-defense. Because it is not possible to be an accessory before the fact to manslaughter, *Commonwealth* v. *Chiovaro*, 129 Mass. 489, 493 (1880), or to a killing committed in self-defense, such a finding by the jury would have resulted in an acquittal of the defendant.

Prior inconsistent statements of a witness generally may be used for the limited purpose of impeaching a witness. See *Commonwealth* v. *Daye*, 393 Mass. 55, 66 (1984). But where a witness, while on the stand, plainly or unequivocally adopts an earlier inconsistent statement as true, the adopted statement acquires full probative value. *Commonwealth* v. *Fiore*, 364 Mass. 819, 823-824 (1974). See *Commonwealth* v. *Daye*, *supra* at 67 n.13. However, if the witness later contradicts his adoption of the prior inconsistent statement, the prior statement does not acquire full probative value. *Commonwealth* v. *Campbell*, 352 Mass. 387, 395 (1967).

Because Walker wavered many times in his testimony on whether he felt afraid during his confrontation with the victim, the judge acted well within his discretion in refusing to provide the requested instruction. *Commonwealth* v. *Carrion*, 407 Mass. 263, 269 (1990), and cases cited. On direct examination, Walker testified that he shot the victim because the defendant ordered him to do so, not because he feared for his life. During cross-examination, when asked whether he thought the victim was going to kill him, Walker replied, "Yes and no." Moments later, Walker testified that he shot the victim because the defendant "gave [him] a nod." Within seconds, he testified that he had feared for his life. Walker immediately retracted that statement, saying that he was just "following orders" when he shot the victim. Walker then responded to defense counsel one last time

---

[4]The defendant had requested that the judge give the following instruction: "There has been evidence in this case where a witness has admitted making statements before this trial that are inconsistent with statements made at trial. I'm referring, of course, to Corey Walker. If you find that a witness confronted with a prior inconsistent statement adopts the earlier statement as true, that prior inconsistent statement so adopted acquires full probative value." The judge refused to give the requested instruction, over the defendant's objection.

that he felt his life was in danger. On redirect examination, Walker offered his ultimate words on the matter, testifying that he shot the victim "for one reason and one reason only," because the defendant told him to do so. The judge correctly noted that Walker changed his testimony at least five times.

While it appears that, at some point during his trial testimony, Walker may have adopted his prior statement, it cannot be said that the adoption was unequivocal. The judge did instruct the jury that they could "take into consideration any inconsistent statements that may have been made on other occasions differing from what the witness testified to while testifying on the stand." Nothing more was required.

4. *Closing argument by the prosecutor.* The defendant argues that the prosecutor's closing remarks misstated the evidence, improperly affecting the jury's decision. Because defense counsel did not object to the remarks, we limit our review to whether a substantial likelihood of a miscarriage of justice has occurred. *Commonwealth v. Gunter,* 427 Mass. 259, 265 (1998).

The defendant points to the following statement by the prosecutor: "[The victim] is trying to plead for his life; and he has this knife out, I suggest to you, in a futile attempt to fight a bullet, that Tally bullet . . . ." The defendant claims that there was no evidence that the victim pleaded for his life, and that the prosecutor could not properly refer to a "Tally" bullet because the judge earlier had ruled that all references to Tally bullets be struck from the record.

Prosecutors and defense counsel must restrict their closing arguments to the evidence and inferences that can be drawn from the evidence. *Commonwealth v. Kozec,* 399 Mass. 514, 516-517 (1987). See *Commonwealth v. Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). The inferences drawn from the evidence need not be necessary and inescapable, only reasonable and possible. *Commonwealth v. Dinkins,* 415 Mass. 715, 725 (1993). The defendant's claim concerning "Tally" bullets is too broad. The judge did strike some of Walker's testimony referring to Tally bullets, specifically Walker's testimony about how he had learned that the murder weapon contained "Black Tallys." However, another reference to "Black Tallys" remained unchallenged in the record. Walker also testified about a conversation he had with the defendant "about Black Tallys" and that, as he gave the murder weapon to Walker, the defendant said, "These will do the job," which Walker

understood to mean "they'll kill [the victim] instantly." From evidence not struck, a juror could have inferred that the murder weapon contained "Black Tallys." The prosecutor made no error in referring to "that Tally bullet."

As to the victim "pleading" for his life, the Commonwealth points to the testimony of only one witness, Celestina DePina, who testified that, immediately before he was shot, the victim stated, "I'm not going to lose my life over you all." While this statement is open to several reasonable interpretations, the claim that the victim was "pleading" for his life is not one of them. *Commonwealth* v. *Dinkins, supra*. Despite this error, "we are substantially confident that, if the error had not been made, the jury verdict would have been the same." *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). When making this determination we consider the remarks in the context of the entire argument, in light of the judge's instruction to the jury and the evidence at trial. *Commonwealth* v. *Cosme*, 410 Mass. 746, 750 (1991), and cases cited. On two occasions, the judge stressed to the jury that closing arguments are not evidence. Moreover, the prosecutor's improper remark did not go to the heart of the defendant's case, but addressed a collateral issue. *Commonwealth* v. *Kozec, supra* at 521-522.

No other errors alleged by the defendant concerning the prosecutor's closing argument have merit.[5] We conclude that the

[5]The defendant challenges the prosecutor's reference to witness Deshawn Jones: "And, when he was upstairs, I bet he didn't hear the police knocking, either." This remark is an indirect reference to the testimony of a police officer, who knocked at the defendant's door soon after the shooting and got no response. The defendant asserts that there "was no evidence that Deshawn Jones was upstairs at a time when police were on the scene." However, the defendant's mother testified that she, the defendant, and Deshawn Jones were all inside the defendant's apartment at the time of the shooting, and saw the police arrive at the scene. The defendant also objects to the prosecutor's statement that Corey Walker "had his Tec 9, his namesake" with him at the time of the shooting. However, Walker testified on three occasions that he had his "Tec 9" with him at the time of the shooting, and the prosecutor did not err by referring to it. The defendant also asserts that the prosecutor improperly vouched for one version of Walker's story, as Walker contradicted himself and testified at another point that he did not have his weapon with him. The prosecutor did not "vouch" that she knew Walker's testimony that he had his gun with him to be true. *Commonwealth* v. *Marangiello*, 410 Mass. 452, 465 (1991) (prosecutor "may not explicitly or implicitly vouch to the jury" that she knows the witness's testimony is true). She simply referred, properly, to

prosecutor's closing remarks did not create a substantial likelihood of a miscarriage of justice.

5. *Jury instructions concerning manslaughter.* The defendant asserts that instructions on the issue of manslaughter were confusing to the jury, and, as a result, deprived him of a basis for a verdict of not guilty. The defendant challenges the following portion of the judge's instructions on manslaughter: "It is also possible for a person to commit a killing in the excessive use of force in self-defense which would reduce the killing from the crime of murder to manslaughter, which is something you may not consider in this case because manslaughter is outside the consideration of this indictment." He challenges as well later instructions: "Remember, the excessive use of force in self-defense drops the crime from murder to manslaughter. Manslaughter is not in this case; and, if that occurred, you must find this defendant not guilty," "you are not to be concerned about an unlawful killing by manslaughter. You are to consider whether or not the killing was murder, not manslaughter. If you drop down to manslaughter, you may not find this defendant guilty."

The defendant objected to these portions of the charge, and we review these alleged nonconstitutional errors according to a nonprejudicial error standard. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998). We examine the challenged portions of the instructions to determine whether, taken as a whole, these instructions would have confused or misled a reasonable juror. *Commonwealth* v. *Wilson*, 427 Mass. 336, 355 (1998). See *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972). Viewed in this manner, we have no doubt that the charge to the jury was entirely adequate. While the excerpts of the instructions quoted above, viewed in isolation and out of context, could be seen as confusing, in the context of the entire charge the judge correctly explained all the legal concepts involved, obviating any possible confusion that could have been caused by the challenged portions.

The judge correctly instructed the jury as to the elements of

facts in evidence.

At oral argument the defendant also raised for the first time two additional alleged misstatements made by the prosecutor during her closing remarks. These issues were neither preserved at trial nor briefed for our review. Pursuant to our obligation under G. L. c. 278, § 33E, we have nevertheless considered the claims and determined that they do not give rise to any miscarriage of justice.

murder, manslaughter, and self-defense. He then explained that, if the Commonwealth failed to prove that Walker did not act in self-defense, they "must" find the defendant "not guilty." He further instructed that, if the jury found that Walker acted in self-defense, but had used excessive force, this would diminish Walker's crime to manslaughter, and that "if that occurred, you must find this defendant not guilty." To this end the judge charged:

> "[T]he evidence in this case raises the issue of whether the killing was justified or excused or was in the exercise of excessive use of self-defense. You must understand that the government must prove beyond a reasonable doubt that that was not the case, that Mr. Walker did not act in self-defense, that he did not act with excessive use of self-defense. Either self-defense, which completely excuses the crime, or excessive use of self-defense, which would drop the crime to manslaughter. They must prove that he did not act that way beyond a reasonable doubt. . . . Bear in mind that in this case this defendant does not bear the burden of proving that Corey Walker acted in self-defense. The Commonwealth must prove beyond a reasonable doubt that Corey Walker did not act in self-defense . . . . If the Commonwealth has failed to prove that then you must find this defendant not guilty."

The judge then emphasized that, "[i]f you drop down to manslaughter, you may not find this defendant guilty."

When the judge stated that "[m]anslaughter is not in this case," it is abundantly apparent from the surrounding statements that he was instructing the jury that *if* the jury found that Walker had committed manslaughter, *then* the defendant could not be guilty of the crime charged. Similarly, his comments that manslaughter is "outside the consideration of this indictment," and that the jury were "to consider whether or not the killing was murder, not manslaughter," when viewed in context, did not amount to an instruction that the jury were precluded from considering manslaughter. Rather, they were used to remind the jury that accessory before the fact of manslaughter is not a crime. While these aspects of the instructions may not have been ideal, we are fully persuaded that any error "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v.

*Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

6. *Motion for a new trial.* The defendant filed a motion for a new trial and for an evidentiary hearing based on what he claimed was the discovery of new evidence: Walker's posttrial recantation of his trial testimony. In an affidavit filed in support of the motion, Walker stated that he believed at the time of the defendant's trial that the defendant had identified him to the police as the shooter in the victim's death, and that he had falsely implicated the defendant in order to gain revenge. After a nonevidentiary hearing, the motion judge, who was not the trial judge, issued comprehensive findings of fact and denied the motion. The defendant claims that the motion judge violated his State and Federal due process rights by denying the motion without hearing Walker's oral sworn testimony, and that she abused her discretion by denying the motion for a new trial.

We deal first with the constitutional claims. In connection with a motion for a new trial a defendant "has no right to insist that oral evidence be heard," and "may be required to present the evidence upon affidavits alone." *Commonwealth* v. *Coggins*, 324 Mass. 552, 557, cert. denied, 338 U.S. 881 (1949), quoting *Commonwealth* v. *Millen*, 290 Mass. 406, 410, cert. denied, 295 U.S. 765 (1935) (no due process violation when judge decides motion for new trial on affidavits alone). The motion judge did not violate any constitutional right of the defendant by refusing to hear Walker's testimony. *Commonwealth* v. *Vinton*, *ante* 180, 183 n.2 (2000).

Intertwined with his constitutional claim, the defendant argues that his motion raised a "substantial issue" and as such he is "entitled" to an evidentiary hearing. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). In determining whether, although not constitutionally required, an evidentiary hearing was mandated, "we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised." *Id.* at 257-258. While we recognize that Walker's affidavit is one of recantation, it is insufficient standing alone to warrant an evidentiary hearing. See *Commonwealth* v. *Francis*, *ante* 353, 371-372 (2000). A new trial is not always required based on an affidavit that a key prosecution witness may have been lying, *Commonwealth* v. *Ortiz*, 393 Mass. 523, 526 (1984), although such an allegation warrants "serious consideration from the motion judge." *Commonwealth* v. *Wat-*

*son*, 377 Mass. 814, 837-838 (1979), *S.C.*, 409 Mass. 110 (1991).

The determination whether such evidence warrants a new trial is left to the sound discretion of the motion judge. *Commonwealth* v. *Stewart, supra*, and cases cited. Here, the motion judge concluded that no substantial issue was presented by Walker's affidavit. She made careful findings, based on the record, that Walker's affidavit was not credible. On our own review of the affidavit and the trial testimony and other case material, we see nothing to warrant disturbing the motion judge's conclusion.

For much the same reasons, we conclude that the judge did not abuse her discretion in denying the defendant's motion for a new trial. To justify granting a new trial, the motion judge must find that there was a substantial risk that the jury would have reached a different conclusion had the "newly discovered" evidence been admitted at trial. *Commonwealth* v. *Salvati*, 420 Mass. 499, 506 (1995). A defendant seeking a new trial must establish "that the evidence . . . casts real doubt on the justice of the conviction." *Id.*, quoting *Commonwealth* v. *Scanlon*, 412 Mass. 664, 679-680 (1992).[6] The evidence "must be material and credible . . . but also must carry a measure of strength in support of the defendant's position." *Commonwealth* v. *Salvati, supra*, quoting *Commonwealth* v. *Scanlon, supra* at 680. The judge ruled that Walker's affidavit had "as much backbone as an invertebrate — it is simply not credible." In reaching this conclusion, the judge relied on several factors, including (1) the corroboration of Walker's original testimony by other witnesses at the defendant's trial[7]; (2) Walker's change of plea, during which he acknowledged as true facts that fully implicated both

[6]A defendant seeking a new trial on the ground of newly discovered evidence must also establish that the evidence is indeed "newly discovered." *Commonwealth* v. *Salvati*, 420 Mass. 499, 506-507 (1995). To meet that test, the evidence must not have been discoverable at the time of trial despite the due diligence of the defendant or his counsel. *Id.* at 507. The motion judge made no explicit finding that Walker's affidavit did not contain newly discovered evidence, but it is clear that she was skeptical of the "newness" of Walker's discovery that someone other than the defendant had pointed the finger at him.

[7]Walker's trial testimony was corroborated by two other principal witnesses. Steven Wilcox testified that the defendant disclosed to him that he gave a gun to Walker, instructed Walker to shoot the victim, and gave Walker a nod when it was time to shoot. Kevin Scott testified that he saw the defendant and Walker conferring on the porch before the shooting, and that the defendant

himself and the defendant; (3) Walker's recorded statement to the police to like effect; and (4) Walker's apparent knowledge, two years before he testified against the defendant, that it was the Scott brothers, not the defendant, who had turned him in to the police.[8] It is clear that the motion judge thoroughly reviewed the record before she made her comprehensive findings of fact, all of which are supported by the record. She did not abuse her discretion in refusing to grant a new trial where the request was based on a single affidavit that she did not find credible. *Commonwealth* v. *Leate*, 361 Mass. 347, 350 (1972).

7. *General Laws c. 278, § 33E, review.* Finally, the defendant asks us to exercise our authority under G. L. c. 278, § 33E, either to direct the entry of a verdict of a lesser degree of guilt, or to order a new trial. We have reviewed the entire record and conclude that none of his arguments merits such relief.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

handed something to Walker just before Walker came downstairs and shot the victim. There was also testimony about the acrimonious relationship that existed between the defendant and the victim, establishing a motive why the defendant may have wanted the victim dead.

[8]The defendant did not inform the police of Walker's involvement in the shooting, and there is no indication that Walker ever believed that he had. To the contrary, there is ample evidence that Walker knew that Kevin Scott or his brother had turned him in. Walker threatened Kevin Scott in an attempt to prevent him from testifying before the grand jury. Moreover, as early as 1995, Walker's attorney was provided with the statements of the Commonwealth witnesses who identified Walker as the shooter; these documents clearly indicated that it was the Scott brothers who identified Walker as the shooter, and that the defendant never did so.