COMMONWEALTH *vs.* WAYNE M. CHIAPPINI.

No. 07-P-321.

Plymouth. February 6, 2008. - July 10, 2008.

Present: GELINAS, McHUGH, & FECTEAU, JJ.

*Practice, Criminal,* New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Attorney at Law,* Conflict of interest. *Conflict of Interest. Evidence,* Exculpatory.

A criminal defendant seeking a new trial failed to demonstrate a genuine conflict of interest arising from his trial counsel's representation of a prosecution witness, where the affidavits filed by the defendant in support of his motion were not credible; where the defendant was acquitted on the only charge on which the witness had offered testimony; and where counsel's representation of the witness ended before the defendant's trial began, leaving counsel entirely unencumbered at the time when his zealous representation mattered most. [191-192]

A trial court judge hearing a criminal defendant's motion for a new trial, brought on the ground that the victim, at his own later plea hearing, admitted to facts that he had denied at the defendant's trial and that were central to the defendant's claim of self-defense, erred to the extent that he concluded that such evidence was not "newly discovered" [196-197]; further, without more than the judge's conclusory finding, this court could not agree with his determination that the victim's admission would not have been a real factor in the jury's deliberation and remanded the matter to the trial court for further proceedings [197-199].

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on February 2, 2006.

The case was tried before *Lance J. Garth,* J., and motions for a new trial, filed on January 2 and April 25, 2007, were also heard by him.

*Joshua R. Weinberger* for the defendant.

*Laurie S. Yeshulas,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. Wayne Chiappini, the defendant, was convicted by a jury of assault and battery by means of a dangerous weapon

(a knife) (G. L. c. 265, § 15A[b]) after a bar fight in Wareham with the victim, Timothy Guinazzo. About six months later, Guinazzo, who had been charged with three offenses, including assault and battery by means of a dangerous weapon (pavement), for his activities in the same fight, pleaded guilty to two of the offenses and admitted to sufficient facts on the charge involving the dangerous weapon. See G. L. c. 278, § 18.

The defendant appealed from his conviction and then filed two motions for a new trial, the denials of which he also now appeals. The first motion alleged that his trial counsel had a conflict of interest in that he represented the defendant at the same time he was representing a prosecution witness, Eric Woods, for unrelated criminal charges Woods was facing.[1] After an evidentiary hearing before the judge who had presided at the defendant's trial, the motion was denied. The second motion, filed after Guinazzo's plea hearing, was based on newly discovered evidence, specifically that, during the colloquy attending his plea, Guinazzo admitted to facts he had denied at the defendant's trial and which were central to the defendant's claim of self-defense. Guinazzo's switch, the defendant contends, compromised the integrity of the trial that produced his conviction. After a hearing before the trial judge, the second motion was denied as well. We vacate the order denying the second motion and remand the matter for further proceedings.

The essential facts relevant to the defendant's appellate claims are these. The fight took place on February 2, 2006, in a parking lot near a bar in Wareham. That evening, the defendant was sitting at the bar with his girlfriend, Linda Oliver, when a number of patrons saw him hit her. One of the patrons, Susan Lovell, walked over to another witness, Eric Woods, who was also sitting at the bar, and asked Woods if he had seen the defendant hit Oliver. Woods agreed that he had. Lovell then walked over to Oliver, rubbed her hand, and took her to the restroom. Woods headed for the exit, but Lovell pulled him to the restroom. While

---

[1]In his first motion, the defendant also claimed that the prosecutor misstated the evidence in his closing argument when he told the jurors that they had been able to view Guinazzo's injuries for themselves, in the absence of any evidence that they had such a viewing opportunity. At oral argument before us, however, the defendant conceded that the jury had an opportunity to see Guinazzo's scars, and he withdrew the claim.

Woods was talking to Lovell, the defendant also came into the restroom.

In the restroom, the defendant shoved Lovell. Woods then pushed the defendant out of the building. Eventually, Oliver and the defendant wound up in the defendant's car in a nearby parking lot where they sat and argued with each other.

Meanwhile, Guinazzo, who was Lovell's boyfriend, learned that the defendant had pushed Lovell, became angry, and sought out the defendant in the parking lot. Guinazzo approached the defendant's car where Oliver and the defendant were still arguing and asked the defendant what his problem was. The defendant responded by saying "fuck you" and opened the car door, shoving it at Guinazzo's legs. Guinazzo then punched the defendant through the open driver's side window, hitting the defendant on the side of the head. The defendant got out of the car, stumbling, and the two men continued fighting. The details of the fight are important, and we return to them *infra*.

Ultimately, the defendant stabbed Guinazzo in the neck with a knife he pulled from his left pocket. Fortunately, the wound was not disabling, and Guinazzo went to his own car where he retrieved a cloth and used it to stop the bleeding. While Guinazzo was tending to his wound, the defendant asked him if he "wanted some more." Then, as people began gathering at the scene, the defendant drove away. Guinazzo went to a hospital where the gash on his neck was closed with twenty-seven stitches.

Police soon arrested the defendant and charged him with assault and battery on Lovell and assault and battery with a knife on Guinazzo. Police also sought a criminal complaint against Guinazzo, charging him with assault and battery with a shod foot and threatening to commit a crime. See G. L. c. 275, § 2. Before a magistrate acted on the police application, the defendant filed his own application for a complaint against Guinazzo for the same two charges. Both applications were heard together and a complaint ultimately issued charging Guinazzo with assault and battery, assault and battery by means of a dangerous weapon, and threats. In the end, the defendant was found not guilty of assaulting Lovell but, as noted, was found guilty of assault and battery on Guinazzo with the knife. As also noted, Guinazzo admitted to sufficient facts regarding the charge of assault and battery by

means of a dangerous weapon (pavement)[2] and pleaded guilty to the other two charges.

Turning from those facts to the defendant's appeal from the denial of his first motion for a new trial, it is clear that counsel's representation of Woods, the prosecution witness, overlapped his representation of the defendant in this case.[3] Nevertheless, where an appellant claims a new trial because of his counsel's conflicted loyalty,

> "[t]he burden lies with the defendant to prove that a genuine conflict of interest existed. The defendant is obliged to present demonstrative proof detailing both the existence and the precise character of this alleged conflict of interest; we will not infer a conflict based on mere conjecture or speculation. An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of trial counsel is impaired, either by his own interests, or by the interests of another client."

*Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986) (citations omitted).

Here, although the affidavits filed by the defendant and by Oliver assert that counsel advised them against filing applications for criminal complaints against Woods, the motion judge found the affidavits to be incredible, a finding that was not clearly erroneous. Equally important, the defendant was acquitted of assault and battery on Lovell, the only charge on which Woods offered testimony. Finally, the defendant has made no claim that the asserted conflict impaired counsel's independent judgment during any stage of the pretrial proceedings, and

---

[2]Although both applications for a complaint against Guinazzo listed a "shod foot" as the dangerous weapon employed, he ultimately admitted to sufficient facts on a charge citing "pavement" as the weapon used. It is unclear from the limited record before us (we have not been provided with a copy of the complaint against Guinazzo) when the designation of the dangerous weapon changed.

[3]Woods had been charged with several motor vehicle offenses, the most serious of which was operating under the influence. See G. L. c. 90, § 24(1)(a)(1). Counsel began his representation of Woods in October, 2005, and ended that representation on June 9, 2006, before the defendant's trial began. Counsel filed an appearance for the defendant on February 8, 2006, and the defendant's trial occurred on July 18 and July 19, 2006.

counsel's representation of Woods ended before the defendant's trial began, leaving counsel entirely unencumbered at the time when his zealous representation mattered most. See *Commonwealth* v. *Balliro*, 437 Mass. 163, 168 (2002) ("[W]e do not automatically infer a conflict of interest from dual or joint representation alone. . . . Furthermore, when a conflict arises from the dual representation of clients, discontinued representation of one will generally alleviate the conflict"). See also *Commonwealth* v. *Smith*, 362 Mass. 782, 783-784 (1973). There was no error in the judge's denial of the defendant's first new trial motion.[4]

The defendant's second motion rests on the premise that there is an irreconcilable conflict between Guinazzo's testimony at the defendant's trial and his testimony at his later plea hearing. Guinazzo's refusal to admit at the trial facts he admitted at the plea hearing, the defendant maintains, seriously undermined his ability to present his theory of self-defense. More specifically, the defendant's theory at trial was that Guinazzo threw him to the ground during the fight, got on top of him, and began banging his head against the pavement. Fearing for his life, the defendant grabbed the knife he carried in his left pocket and swung wildly at Guinazzo, cutting him and ending the assault. At trial, Guinazzo, although never asked directly whether he banged the defendant's head into the pavement, denied that the defendant had been on the ground during the fight. At his later plea colloquy, however, Guinazzo admitted "hitting [the defendant's] head on the asphalt."

Chronology provides a helpful context for assessing the defendant's claims. The record reveals that on the night of the fight, the principal investigating officer, John Iacobucci, interviewed Guinazzo, who said that he "got [the defendant] on the ground and began punching him."[5] On February 8, 2006, six days after the fight, the defendant, in a signed statement ac-

---

[4]The defendant's claim on appeal that references to the uncharged act of hitting his girlfriend were impermissible references to prior bad acts that created a substantial risk of miscarriage of justice is resolved even more swiftly. Knowing that the defendant slapped his girlfriend was critical to understanding the sequence of events and the context in which Guinazzo and the defendant fought.

[5]According to Officer Iacobucci's report, "Mr. Guinazzo stated he then

companying his application for a complaint against Guinazzo, said that Guinazzo had thrown him to the ground and kicked him.[6] The defendant made no mention that Guinazzo banged his head on the pavement. Indeed, in the space on the application for a description of the offense, the defendant, who for sixteen years had been a correction officer, wrote Guinazzo "kicked me with shod foot in head and body."

So far as the record reveals, that is the way the stories stood as the defendant's trial began. Called as a witness by the Commonwealth, Guinazzo had the first opportunity to change the story and he took it, denying that the defendant was ever on the ground during the fight[7] and denying that he ever hit the defendant with anything other than his fists.[8] His denial was impeached by

reached into the vehicle and punched [the defendant] in the face. Mr. Guinazzo pulled [the defendant] out of the vehicle, got him on the ground and began punching him."

[6]In the statement, the defendant said that Guinazzo "was swearing and said he was going to kill me. He reached in and punched me in the face as I sat there. He then opened the door and grabbed me and pulled me out of the car. He hit me in the back of the head. He threw me to the ground and as he stood over me he kicked me in the back and the back of my head as I tried to cover myself up. He had some kind of shoes on."

[7]In his direct testimony, Guinazzo said that he and the defendant were fighting and that the defendant had come up beside him and cut him. He was not asked any questions about punching the defendant while he was on the ground. Cross-examination elicited the following testimony:

> DEFENSE COUNSEL: "Okay. And you got [the defendant] on the ground and began punching him, is that what happened?"
>
> THE WITNESS: "I've never . . . I nev . . . [the defendant] never went to the ground."
>
> DEFENSE COUNSEL: "Okay."
>
> THE WITNESS: "And I didn't punch anybody while their . . . anybody was on the ground."
>
> DEFENSE COUNSEL: "And you did . . . And you did not tell the police that either?"
>
> THE WITNESS: "No, I did not, sir."

[8]Here is what Guinazzo said in that regard:

> THE PROSECUTOR: "What had you been using . . . You . . . Your testimony was that you got into it with the defendant prior to him slashing the back of your neck, is that correct?"

Commonwealth *v.* Chiappini.

cross-examination of Officer Iacobucci regarding the content of the statement he had taken from Guinazzo soon after the fight.[9]

When his turn came, the defendant, too, presented a different version of events than he had before, now stating that Guinazzo not only had kicked him while he was on the ground, but also had been on top of him, banging his head on the pavement as he held him down.[10] The defendant was not cross-examined about his earlier statement.

During summation, defense counsel did not mention the de-

THE WITNESS: "Right."

THE PROSECUTOR: "What . . . When you say you were getting into it, your testimony is that you had a fight, correct?"

THE WITNESS: "Correct."

THE PROSECUTOR: "What were you using . . . What . . . What were you using to hit the defendant at that time?"

THE WITNESS: "My fist."

THE PROSECUTOR: "Okay."

THE WITNESS: "Yep."

THE PROSECUTOR: "And no other instrument?"

THE WITNESS: "No other instrument at all, no."

[9]In material part, Officer Iacobucci's testimony on cross-examination was as follows:

DEFENSE COUNSEL: "And [Guinazzo] then threw [the defendant] to the ground, is that correct?"

THE WITNESS: "That's correct."

". . .

DEFENSE COUNSEL: "Okay. Did you write down in your police report that . . . that after [Guinazzo] pulled [the defendant] out of the vehicle, he got him on the ground and began to punch him?"

THE WITNESS: "Yes."

[10]Consistent with the statement the defendant submitted with his complaint application, his first witness, Joseph Quinton, testified that he saw the defendant on the ground during the fight but was unable to see what happened while he was there. The defendant's next witness, Linda Oliver, said that she saw the defendant on the ground during the fight and that Guinazzo was repeatedly kicking and stomping him, an account that was also consistent with the defendant's earlier statement.

fendant's "head-banging" allegation, focusing instead on inconsistencies between the account Guinazzo had given Officer Iacobucci on the night of the incident and his testimony at trial. Counsel also urged the jury to conclude that the defendant acted in self-defense as he was "punched" by Guinazzo while pinned to the ground. For its part, the Commonwealth argued that the defendant's claim to have knifed Guinazzo while pinned to the ground in mortal fear was incredible and that the jury should accept Guinazzo's testimony that the defendant stabbed him in the middle of a stand-up fistfight from which the defendant could easily have escaped.[11]

By the time of Guinazzo's plea colloquy six months later, however, the Commonwealth's view of the fight had changed. After Guinazzo tendered a plea of guilty to the charge of assault and battery and threatening to commit a crime, and had offered to admit to facts sufficient to warrant a finding of guilty on the charge of assault and battery by means of a dangerous weapon, the judge asked the Commonwealth for a summary of the facts it anticipated proving if the case proceeded to trial. In pertinent part, the Commonwealth alleged that it would have proved at trial that Guinazzo "punched Mr. [Chiappini] through the open window of his car, dragged him out of his car, smashed his head against the pavement and began punching him about the head."[12] Guinazzo agreed that the Commonwealth's recitation was accurate.

---

[11]The essence of the Commonwealth's argument is captured by the following:

> "That the defendant somehow gets out of the car, they're on the ground, they're . . . they're fighting. He says that [Guinazzo's] on top of him. Ladies and gentlemen, one of the things that the judge is going to tell you in evaluating the evidence in this case is that you can use your own common sense. The defendant says he's lying down on the floor. The victim, he says, is on top of him. Yet he's able to get a knife out of his pocket while the victim's on top of him? He testified that he gets the knife out and he brandishes the knife and says I've got a knife. Is it reasonable to believe that Mr. Guinazzo would then continue to punch him once the defendant has brandished a knife? . . . Are his injuries more consistent with Mr. Guinazzo's story, that they were both standing up, that this defendant pulled out the knife and swung like that. Or is it more consistent with the defendant's story, that he was able to get his knife out while he was laying on top of him and just starts swinging and doesn't know if he hit anybody?"

[12]Again for the sake of context, the pertinent part of the colloquy involving

Guinazzo's admission that he had been hitting the defendant's head against the pavement was the "newly discovered evidence" on which the defendant based his second new trial motion. The Commonwealth opposed that motion, and like the defendant's first motion, it was heard by the judge who had presided at the defendant's trial. The judge denied the motion, saying that

> "[d]efendant Chiappini was present and declined to speak at the disposition [before Guinazzo's sentencing]. The prosecutor at the plea tender presented a summary of the expected testimony which he felt supported the allegation. After consideration of all evidence available the court finds there was no newly discovered evidence presented to cast real doubt on the justice of the conviction and defendant's Motion for a new trial is denied."

On this record, and in the absence of more detailed findings on the impact Guinazzo's later admissions might have had on the jury's deliberations, we think that denial of the motion was error.

To succeed on a motion for new trial based on a claim of newly discovered evidence, the defendant must satisfy two principal elements. First, the evidence "must . . . have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial. . . . The defendant has the burden of proving that reasonable pretrial diligence would not have

---

Guinazzo, the assistant district attorney, and the judge proceeded as follows:

THE PROSECUTOR:"[There] would be testimony that Mr. [Chiappini] and Ms. Oliver were in their car. That Mr. [Chiappini] had his left window down. He was about to operate his vehicle when the defendant charged at his car, that he punched Mr. [Chiappini] through the open window of his car, dragged him out of the car, smashed his head against the pavement and began punching him about the head. Admittedly, Mr. [Chiappini] did use a knife in self-defense. Those essentially would be the facts, Judge."

THE JUDGE: "Excuse me. Well, yeah. The issue of self-defense I guess, has already been . . . decided by a jury, and the alleged victim in this case is now serving time. But with respect to those facts, sir, in terms of the assault and battery, and the assault [with a] dangerous weapon, which was using the asphalt and hitting this gentleman's head on the asphalt, and the threats, are those facts true?"

MR. GUINAZZO: "Yes, sir."

uncovered the evidence." *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986). Second, the evidence must

> "cast[] real doubt on the justice of the conviction. The evidence said to be new not only must be material and credible but also must carry a measure of strength in support of the defendant's position. Thus newly discovered evidence that is cumulative of evidence admitted at the trial tends to carry less weight than new evidence that is different in kind. Moreover, the judge must find there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial. The motion judge decides not whether the verdict would have been different, but rather whether the new evidence would probably have been a real factor in the jury's deliberations. This process of judicial analysis requires a thorough knowledge of the trial proceedings, and can, of course, be aided by a trial judge's observation of events at trial."

*Id.* at 305-306 (citations omitted). See *Commonwealth* v. *Jones*, 432 Mass. 623, 633 (2000). As usual, we approach the defendant's claim of error with the deference traditionally due the motion judge's exercise of discretion, particularly where the motion judge was also the trial judge. See *Commonwealth* v. *Grace*, *supra* at 307.

In reaching our conclusion, we think, first of all, that Guinazzo's admission to smashing the defendant's head against the pavement was "newly discovered evidence," and to the extent the motion judge's findings can be viewed as reaching a contrary result, the findings contain an error of law. Guinazzo's admission was "new" because, although the defendant himself had testified about the "head-banging" component of their fight, Guinazzo's admission changed the defendant's highly impeachable "head-banging" allegation into an essentially agreed fact. Moreover, it does not appear that anything the defendant or counsel could have done before trial would have uncovered the evidence. After all, Guinazzo denied at trial that the defendant was ever on the ground, and his statement to the police said nothing about smashing the defendant's head into the pavement.[13]

Because Guinazzo's admission was "newly discovered evi-

---

[13]Even if Guinazzo's admission did not constitute "newly discovered"

dence," the question becomes "whether the new evidence would probably have been a real factor in the jury's deliberations." *Id.* at 306. See *Commonwealth* v. *Jones, supra* at 633. Without more than the judge's conclusory finding, we cannot agree with his determination that the admission would not have been a real factor, for, as noted above, an important component of the defendant's self-defense allegation rested on his testimony that Guinazzo was on top of him banging his head into the pavement when he slashed at him with the knife in an effort to protect himself from serious, if not mortal, danger. In summation, the prosecutor urged the jury to disregard the defendant's story and to accept Guinazzo's claim that both men were standing when the defendant cut him. Apparently, the jury heeded the prosecutor. But it is one thing for a combatant to slash with a knife at his unarmed opponent in the middle of a fistfight when both are standing, and quite another thing if he does so when pinned to the ground under attack from his opponent's own dangerous weapon. At the very least, therefore, we think that additional and specific findings on the probable impact of Guinazzo's admission are necessary before the defendant's new trial motion can be justly denied.[14]

The order denying the defendant's second motion for a new

evidence, it is certainly "exculpatory" and it obviously was not disclosed to the defendant before trial, as exculpatory evidence must be. See *Commonwealth* v. *Tucceri,* 412 Mass. 401, 409 (1992); *Commonwealth* v. *Iguabita,* 69 Mass. App. Ct. 295, 302 (2007), quoting from *Commonwealth* v. *Schand,* 420 Mass. 783, 787 (1995). We assume that the prosecutor did not know before or during the defendant's trial of Guinazzo's acknowledgment that he smashed the defendant's head into the pavement. We assume further that the prosecutor's lack of knowledge accounts not only for the absence of a pretrial disclosure but also for uncorrected trial testimony by Guinazzo that the defendant was never on the ground during the fight. When and how the prosecutor learned of Guinazzo's different version is a subject that may be explored, if necessary, on remand.

[14]In so saying, we recognize that, under ordinary circumstances, the statement the defendant submitted with his application for a complaint against Guinazzo in which he made no mention of Guinazzo pinning him down and banging his head against the pavement could be used to impeach him at any retrial. The existence of that statement, again under ordinary circumstances, might therefore be a factor in determining whether a new trial is warranted notwithstanding the "newly discovered evidence." Here, though, Guinazzo's agreement that he did bang the defendant's head into the pavement substantially undercuts, if it does not dissolve entirely, the impeachment value of the defendant's pretrial statement.

trial is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*