## COMMONWEALTH *vs.* NATHANIEL HARBIN.

Plymouth. October 5, 2001. - January 22, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Practice, Criminal,* Admissions and confessions, Instructions to jury, Jury and jurors, Argument by prosecutor, New trial, Capital case. *Constitutional Law,* Assistance of counsel, Speedy trial. *Evidence,* Hearsay, Spontaneous utterance, Consciousness of guilt, Expert opinion, Credibility of witness. *Witness,* Expert, Credibility. *Jury and Jurors.*

There was no substantial merit to claims of ineffective assistance of counsel in a case of murder in the first degree, where there was no serious failure by trial counsel in not objecting to certain testimony of the victim's mother that was alleged to have evoked sympathy from the jury, or in failing to move to strike other testimony that was alleged to have prejudiced the defendant. [656-657]

At a murder trial, there was sufficient evidence of personal knowledge to justify the judge's admission, as an excited utterance, of a witness's statement to a police officer that the defendant and another were present at the shooting. [657-658]

At a murder trial, there was sufficient evidence to warrant the judge's instruction to the jury on the defendant's consciousness of guilt. [658]

At a murder trial, the judge properly gave a general instruction that it was for the jury to decide whether to accept or reject any parts of any witness's testimony, and the fact that the judge chose not to comment specifically on the jury's role in evaluating an expert's testimony did not create a substantial likelihood of a miscarriage of justice, especially where he gave instructions to the same effect with regard to testimony in general; further, defense counsel was not ineffective in failing to request further instruction, where counsel's choice was a strategic one. [658-659]

At a murder trial, the judge's instructions to the jury involving the verdict slip, explaining that several different verdicts were available, did not create a substantial likelihood of a miscarriage of justice, even if his explanation of the verdict slip was imperfect, where any confusion was dispelled by the judge's correctly instructing the jury on this point some twenty-two times throughout the course of the jury charge. [659-660]

There was no merit to claims by the defendant at a murder trial that, in the prosecutor's closing argument, he improperly appealed to the sympathy of the jurors, misstated evidence, and disparaged defense counsel's tactics. [660-661]

On review of the findings of fact and rulings of law of a judge on a motion for a new trial in a murder case, on the ground that the defendant had been denied the speedy trial required by Mass. R. Crim. P. 36 (b) (2), 378 Mass.

909 (1979), this court found no reason to disagree with the judge's assessment that the Commonwealth had met its burden of showing that the periods in excess of 365 days were either specifically excluded under rule 36 (b) (2), or that "the defendant acquiesced in, was responsible for, or benefited from the delay." [661-662]

On a motion for a new trial on the ground that defense counsel's failure to call a certain witness was ineffective assistance of counsel, where the proffered testimony was not contradictory, it was within the judge's discretion to exclude it; further, with regard to the witness's opinion that another witness was a "liar," it was for the jury alone to determine the credibility of witnesses. [662-663]


INDICTMENT found and returned in the Superior Court Department on March 2, 1993.

The case was tried before *Gordon L. Doerfer*, J., and motions for a new trial were considered by him.

*James A. Couture* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. Nathaniel "China" Harbin was convicted of murder in the first degree for shooting Travis Powell in the forehead at point blank range with a shotgun. On appeal, the defendant raises a number of issues that he argues entitle him to a new trial. Because these claims lack merit, and because our review of the record under G. L. c. 278, § 33E, reveals no reason that justice would require our intervention, we affirm the conviction, affirm the orders denying the defendant's motions for a new trial, and deny § 33E relief.

We recite the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised. On the day of the murder, the defendant went to a crack house in Brockton and exchanged greetings with Stephanie Cannata, a witness who knew him only casually. She knew who he was, she said, because she had seen him in some of the same bars that her father, Stanley Santos, frequented. She testified that the defendant called her "Santos'[s] kid" when he greeted her that day. During the visit Cannata saw him open a closet door, remove a gym bag, rummage through it, and then leave.

Soon the defendant returned, this time in the company of Ter-

rance Hicks, the codefendant. The defendant addressed the victim, Travis Powell, who had been running the crack house for less than one week. Pointing a double-barreled shotgun at the victim, the smiling defendant asked, "What's up now, punk?," and "What's up now, sucker?," then fired a blast into the wall over the victim's head. Seconds later, as the victim raised his arms in front of his head in a defensive posture, the defendant fired a second blast, striking the victim in the arm and hand as well as his forehead. The defendant and the codefendant then left the apartment. The victim died almost immediately.

Shortly thereafter, in the early hours of the morning, the defendant paid a visit to his friend, Katrina Bostic. He told her he was leaving town and that he was going to miss her. Although the police initiated a search for the defendant within minutes of the shooting, he was not apprehended until almost two years later, in New York State.

We address the defendant's claims seriatim and add additional facts where necessary.

1. *Ineffective assistance of counsel.* In evaluating a claim of ineffective assistance of counsel in a case of murder in the first degree, we begin by determining whether there was a serious failure by trial counsel. If so, then we determine whether the failure resulted in a substantial likelihood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992) ("substantial likelihood" standard, more favorable to defendants, is used in capital cases). We give trial counsel's tactical decisions due deference. See *Commonwealth* v. *Fisher*, 433 Mass. 340, 354 (2001). Unless such a decision was "manifestly unreasonable when made," we will not find ineffectiveness. *Commonwealth* v. *Coonan*, 428 Mass. 823, 827 (1999), quoting *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998).

The defendant claims that his attorney was ineffective because he did not object to testimony from the victim's mother that evoked sympathy from the jury, and did not move to strike the testimony of Maria Frautten. Both claims lack merit. The mother's testimony was admissible to explain the victim's presence in the crack house and to provide "family background

information" "to humanize the proceedings." *Commonwealth* v. *Marshall*, 434 Mass. 358, 368 (2001), quoting *Commonwealth* v. *Degro*, 432 Mass. 319, 323 (2000). The judge committed no "palpable error" in admitting her testimony, *Commonwealth* v. *Marshall*, *supra* at 369, quoting *Commonwealth* v. *McIntyre*, 430 Mass. 529, 539 (1999), and there was no ineffective assistance of counsel.

Frautten's testimony began with her statement that she once knew a person named "China," but that she could not remember who that person was. Given her apparent lack of personal knowledge, she was quickly ushered off the stand. The defendant argues that the jurors might have inferred that she had recognized the defendant as "China," but refused to identify him because she was afraid, thereby prejudicing him. We are not convinced by the defendant's efforts to draw such an attenuated inference. There was no misstep by trial counsel for failing to move to strike this testimony, and there is no substantial likelihood of a miscarriage of justice here.

2. *Hearsay.* The defendant next complains that there was insufficient evidence of personal knowledge to justify the admission of a witness's statement to a police officer that "China and Terry were there [at the shooting]." The officer's testimony of what the witness had said was admitted as an excited utterance. See, e.g., *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990) (spontaneous utterance exception to hearsay rule requires utterance qualifying, characterizing, or explaining event, made under influence of exciting event and before declarant has had time to contrive or fabricate, to ensure sufficient indicia of reliability). Although witnesses may not testify unless evidence is introduced sufficient to support a finding that they have personal knowledge of the matter about which they are testifying, see P.J. Liacos, Massachusetts Evidence § 6.5, at 268 n.1 (7th ed. 1999), there is no requirement that the declarant have been a participant in the exciting event. "[A] bystander's declarations would be admissible." 6 J. Wigmore, Evidence § 1751, at 222-223 (1976). See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223-224 (1973) (where witness testifies from personal knowledge, spontaneous utterance exception not limited to participant in event that is subject of utterance).

Here, when an eyewitness told the police that she "saw everything. . . . China and Terry did it," the trial judge sanitized the statement to "China and Terry were there," out of concern that there was insufficient evidence before the jury of the witness's personal knowledge. The concern was unwarranted, because "[e]vidence to prove personal knowledge may . . . consist of the testimony of the witness h[er]self." P.J. Liacos, *supra*. The. witness's statement that she "saw ·everything" would have laid sufficient foundation for the remainder of the statement, that "China and Terry did it." The defendant got a windfall with the judge's sanitization of the excited utterance, and no error was committed.

3. *Jury instructions.* The defendant claims three points of error in the instructions given to the jury at trial. With regard to all of these claims, we consider the jury charge as a whole, "looking for the interpretation a reasonable juror would place on the judge's words." *Commonwealth* v. *Trapp*, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996).[1] We find no error.

a. *Consciousness of guilt.* The judge included an instruction to the jury on the proper basis to consider evidence of the defendant's consciousness of guilt. The defendant argues that this was error, because there was insufficient evidence to support such an inference. We disagree. The evidence on this issue, including the defendant's flight from the scene, his late-night visit to tell a friend that he was leaving and would miss her, the inability of the police to find him in the Commonwealth, and his apprehension two years later in another State, amounts to sufficient evidence to warrant an instruction on consciousness of guilt.[2] See *Commonwealth* v. *Hamilton*, 426 Mass. 67, 75 (1997).

b. *Expert witness.* The judge gave a general instruction that it

---

[1]See *Commonwealth* v. *Lapage*, *ante* 480, 489-490 (2001) (Cordy, J., dissenting), for a recent compilation of cases on this point.

[2]The defendant also argues that the judge erred in permitting Katrina Bostic to testify that the defendant stopped by her apartment after the shooting to tell her that he would be leaving and would miss her, because her testimony was not relevant. Her testimony clearly contributed to the evidence of consciousness of guilt, and was relevant. See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 321 (2001) (no error in admission of evidence relevant only to consciousness of guilt). There was no error in allowing her to testify.

was for the jury to decide whether to accept or reject any parts of any witness's testimony. The defendant maintains that the judge erred in failing to instruct the jury additionally that they may believe all, some, or none of the fingerprint expert's testimony, specifically, and that his attorney was ineffective for not requesting such an instruction. A judge, however, "need not instruct on every subsidiary fact and possible inference." *Commonwealth* v. *Chasson*, 383 Mass. 183, 188 (1981). That the judge chose not to comment specifically on the jury's role in evaluating the expert's testimony did not create a substantial likelihood of a miscarriage of justice, especially where he gave instructions to the same effect with regard to testimony in general. Cf. *Commonwealth* v. *Simpson*, 434 Mass. 570, 591 (2001) (lack of instruction on failure of police to conduct forensic test did not create substantial likelihood of miscarriage of justice); *Commonwealth* v. *Cordle*, 412 Mass. 172, 178 (1992) (same). As for trial counsel's failure to request it, this was a strategic choice. The fingerprint testimony was damaging to the defendant, and a particular instruction would have highlighted it for the jury. Trial counsel may have determined that the general instruction, which the jury properly received, was preferable. We will not second-guess the defendant's trial strategy. See *Commonwealth* v. *Fisher, supra.*

c. *Verdict slip.* In describing the verdict slip that the jury would have to complete, the judge explained that several different verdicts were available. The judge said:

> "What are the possible verdicts in this case? Obviously, if the Commonwealth has not proved its case beyond a reasonable doubt, the *possible* verdict is not guilty. Another possible verdict, if you are persuaded beyond a reasonable doubt of all the elements of first degree murder[,] is a verdict of guilty of murder in the first degree. If you are not persuaded of all the elements of murder in the first degree, but you are persuaded of the elements relating to murder in the second degree, that is also a possible verdict in this case, so long as you are persuaded beyond a reasonable doubt as to the elements of murder in the second degree." (Emphasis added.)

The defendant claims that the emphasized language was er-

roneous, correctly noting that if the Commonwealth has failed to prove its case beyond a reasonable doubt, then "not guilty" is not only a possible verdict, but a mandatory one. See, e.g., *In re Winship*, 397 U.S. 358, 364 (1970).

While we understand the defendant's concern, we cannot say there was a substantial likelihood of a miscarriage of justice as a result of this instruction. The judge's meaning was conveyed, and his meaning was correct. He described three verdicts available to the jury: not guilty, guilty of murder in the first degree, and guilty of murder in the second degree. Until the jury deliberated, all were possible verdicts, and whether they were appropriate would be determined by the jury's assessment of what the Commonwealth had proved beyond a reasonable doubt.

If there had been any confusion, it was dispelled when the judge went on immediately after describing the verdict slip to state: "[O]f course if you're not persuaded beyond a reasonable doubt as to the elements of the crime, or the identity of the [d]efendant as the perpetrator, then your verdict must be not guilty." He correctly instructed the jury on this point no less than twenty-two times throughout the course of the jury charge. Thus, even if his explanation of the verdict slip was imperfect, there is no substantial likelihood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Fickling*, 434 Mass. 9, 19-20 (2001).

4. *Closing argument.* The defendant claims that in the prosecutor's closing argument, he improperly appealed to the sympathy of the jurors, misstated evidence, and disparaged trial counsel's tactics. These claims lack merit, and warrant little discussion.

The defendant claims the prosecutor improperly appealed to the jury's sympathy in his closing by returning to the "dramatic" description of events begun in his opening. We find nothing impermissibly inflammatory in either opening statement or closing argument. See *Commonwealth* v. *Thomas*, 400 Mass. 676, 683 (1987), quoting *Commonwealth* v. *Ingram*, 14 Mass. App. Ct. 999, 999 (1982) ("To the degree the recitation of the evidence was inflammatory, that was inherent in the odious and brutal nature of the crime[] committed").

The defendant next complains that the prosecutor in his clos-

ing implied a greater familiarity between Cannata and the defendant than the evidence warranted, and that the prosecutor provided the jury with a motive for the killing when there had been no evidence of any motive presented at trial. The transcript does not support either claim. The transcript pages cited for the first proposition include such declarations by the prosecutor as, "she wasn't social with him, but she knew who he was," and "[h]e recognized her and said, 'You're one of Santos'[s] kids." No undue familiarity is implied by such statements, or any others made by the prosecutor. As for the defendant's motive claim, the prosecutor is permitted to argue reasonable inferences from the evidence. See, e.g., *Commonwealth* v. *Jones*, 432 Mass. 623, 628 (2000), and cases cited. There had been no evidence of prior trouble between the victim and the defendant, but evidence did link them both to the drug dealing that was done from the crack house. The prosecutor's suggestion that the victim's death was related to his selling drugs from that location was a reasonable inference based on the evidence.

The defendant also claims that the prosecutor disparaged trial counsel's tactics in his closing argument. He contests the prosecutor's statement that trial counsel wanted to "dirty up" the witness Cannata, and references additional comments that he claims were disparaging of trial counsel without specifying what those might have been. Pursuant to our obligation under G. L. c. 278, § 33E, we have reviewed the entire transcript for improper disparagement of trial counsel. See *Commonwealth* v. *Jones*, *supra* at 629-630 n.5. We agree with the trial judge, whose opinion on the matter was recorded during a colloquy immediately after the prosecutor's closing. The prosecutor's occasional reference to the questions trial counsel asked on cross-examination, and to what trial counsel would have the jury believe, was a permissible rhetorical device. In any event, none of the cases cited by the defendant discusses disparagement of trial counsel, leaving this contention bereft of legal support, and short of the requirements for appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

5. *Motions for a new trial.* Finally, we briefly address the defendant's claims of error in the denials of his two motions for a new trial. The defendant first contended that he was denied

the speedy trial required by Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979), and that this denial was the result of counsel's ineffectiveness in failing to request a speedy trial in a timely fashion. We disagree.

The speedy trial rule permits the Commonwealth 365 days in which to try a defendant, excluding certain periods of permissible delay (such as the time to await a decision in an interlocutory appeal, or to procure an essential witness whose presence for trial cannot be obtained by due diligence). See *id.* The defendant asserts that this period was exceeded. Two judges ruled it was not, one on September 16, 1997, and the other on June 1, 1999. We have reviewed their findings of fact and rulings of law, and find no reason to disagree with their assessment that the Commonwealth has met its burden of showing that the periods in excess of the year were either specifically excluded under rule 36 (b) (2) or that "the defendant acquiesced in, was responsible for, or benefited from the delay." *Commonwealth* v. *Spaulding*, 411 Mass. 503, 504 (1992). There is no substantial likelihood of a miscarriage of justice here.

The defendant also contests the denial, without a hearing, of his second motion for a new trial. In his first motion for a new trial, the defendant offered the testimony of Stanley Santos, Cannata's father, as newly discovered evidence. The defendant claimed that Cannata's father would say that he had never seen the defendant before, impeaching his daughter's testimony that the defendant referred to her as "Santos'[s] kid," and testifying that she is a liar generally. The defendant argues that trial counsel's failure to call Santos at trial was ineffective assistance of counsel. Moreover, he claims that postconviction counsel was ineffective for erroneously arguing the point as one of newly discovered evidence, rather than as ineffective assistance of trial counsel. The defendant's second motion for a new trial was an attempt to rectify this, outlining the failure to call Santos as an ineffectiveness of trial counsel that warranted a new trial.

We agree with the judge's denial of the motion because Santos's testimony would not have contradicted Cannata's. The witness never said that her father and the defendant knew each other; rather, she said that she had seen the defendant when she

went into bars looking for her father. When the proffered testimony is not contradictory, it is within the judge's discretion to exclude it. See, e.g., *Commonwealth* v. *Pina*, 430 Mass. 266, 271 (1999).

As far as Santos's opinion that his daughter is a liar, it is for the jury alone to determine the credibility of witnesses, and witnesses may not offer their opinions on the credibility of other witnesses. See, e.g., *Commonwealth* v. *Federico*, 425 Mass. 844, 848-849 (1997), and cases cited. There was no error here, and no ineffective assistance of counsel.

· 6. *G. L. c. 278, § 33E.* For the reasons discussed above, and because justice does not require it, we decline to order a new trial or to reduce the defendant's conviction. See *Commonwealth* v. *Vinton*, 432 Mass. 180, 193 (2000). The defendant fired a shotgun into the wall over the victim's head, taunted him, and then, while the victim held his hands before his face in a defensive posture, shot again at point blank range into the victim's head. We see no basis for relief under G. L. c. 278, § 33E.

*Judgment affirmed.*

*Orders denying motions for new trial affirmed.*