Commonwealth vs. Bol Choeurn.

Middlesex. December 9, 2005. - April 12, 2006.

Present: Marshall, C.J., Greaney, Spina, & Cowin, JJ.

*Homicide. Identification. Evidence,* Identification, Photograph. *Practice, Criminal,* Instructions to jury, Assistance of counsel, Argument by prosecutor, Capital case. *Constitutional Law,* Assistance of counsel.

At a murder trial, the judge's instructions to the jury regarding a key eyewitness's out-of-court photographic identification of a third party as the victim's stabber did not limit in any respect the jury's substantive consideration of that evidence and thus did not create a substantial likelihood of a miscarriage of justice [515-519], and defense counsel did not render ineffective assistance by failing to object to those instructions [519], or by failing to seek to exclude as unnecessarily suggestive the eyewitness's in-court identification of the defendant, an action that was purposeful and consistent with a reasonable strategy [519-521].

A criminal defendant failed to demonstrate that the prosecutor's closing argument at trial improperly argued facts not in evidence to bolster the credibility of a key eyewitness. [521-524]

This court saw no reason on the record of a murder trial to grant relief under G. L. c. 278, § 33E. [524]

Indictment found and returned in the Superior Court Department on November 5, 2001.

The case was tried before *Kenneth J. Fishman,* J., and a motion to set aside the verdict or, in the alternative, for a new trial was heard by him.

*Ruth Greenberg* for the defendant.

*Loretta M. Smith,* Assistant District Attorney, for the Commonwealth.

Marshall, C.J. A jury found the defendant, Bol Choeurn, guilty of murder in the first degree on a theory of extreme atrocity or cruelty for stabbing to death a twenty-two year old man during a fight. The defendant was tried with a codefendant, Pov Hour, who was convicted as a joint venturer of murder in

the first degree, also on a theory of extreme atrocity or cruelty.[1] See *Commonwealth* v. *Pov Hour, ante* 35 (2006). The defendant appeals from his conviction and from the denial of his motion to set aside the verdict or, in the alternative, for a new trial.

The principal focus of the defendant's appeal is his claim that Oanh Tran, a key eyewitness, identified two men, the defendant and an individual named Nak Choeurn, as the man who stabbed the victim. Tran first told the police that a man named "BJ" had been the perpetrator, and she identified from a pretrial photographic array an individual whom she said was BJ. Midway through the trial defense counsel revealed that the man in the photograph selected by Tran was not the defendant, but Nak Choeurn.[2,3] On appeal, the defendant argues that the judge's instructions to the jury regarding Tran's out-of-court identification, to which the defendant did not object, "improperly forbade" the jury from considering Tran's "repeated identification of [Nak Choeurn] as the true killer." He claims that these instructions created a substantial likelihood of a miscarriage of justice, and that trial counsel was ineffective in failing to object to them. He also contends that trial counsel's failure to seek to exclude as unnecessarily suggestive Tran's in-court identification of the defendant constituted ineffective assistance of counsel. For the reasons we shall explain, we reject the arguments relating to Tran's identification of the defendant as the person who stabbed the victim: they rest on a mischarac-

[1]The judge severed Bol Choeurn and Pov Hour's trial from the individual trials of Sokphann Chhim and Kimthy Un, who were also indicted in connection with the death of the victim. At the time of trial a fifth alleged participant, Thol Leang, had not been apprehended.

[2]The record reveals that the name of the individual shown in the photograph selected by Tran is variously described as Nak Choeurn, or Chhoeun. We use the spelling on the back of the photograph selected by Tran.

[3]The Commonwealth had proceeded on the mistaken belief that the photograph of BJ selected by Tran was in fact a photograph of the defendant. The mistake had apparently arisen because, according to a police witness, State Trooper Alan Hunte, the defendant had used the name Nak Chhoeun as an alias, and crimes that Nak Chhoeun had committed in 1995 were on the defendant's probation record. The Commonwealth proffered evidence that the defendant was "BJ," and asserted that the Lynn and Revere police departments had conducted various field interviews of the defendant, including one in which he identified himself as BJ.

terization of the evidence or a misapprehension of the judge's instructions.

The defendant also claims that the prosecutor's closing argument was improper in suggesting that Tran was reliable because she had volunteered to testify at trial when there was no evidence to that effect. The argument is not persuasive. Finally, he argues that we should exercise our power pursuant to G. L. c. 278, § 33E, to order a new trial. We affirm the defendant's conviction and decline to grant relief under G. L. c. 278, § 33E.

1. *Background.* We describe briefly the events that transpired on the night of the victim's death, which are recounted in more detail in *Commonwealth* v. *Pov Hour, supra* at 36-39 (affirming codefendant's conviction). We then turn to Tran's out-of-court photographic identification and her in-court identification of the defendant.

a. *The events leading to the victim's death.* The killing was the culmination of a late-night melee. Several men were indicted for the crime. Only one witness, Tran, identified the defendant as having been present at the scene.

The evidence was that, on the night of July 13, 2001, while Tran was standing in front of a house on Cross Street in Lowell, a Cadillac automobile driven by codefendant Hour pulled up in front of her. Tran knew Hour and the other men in the automobile. When asked whether she wanted to join the men, who were going to a party in Lynn, Tran agreed and entered the automobile, sitting in the front seat between Hour (known to Tran as "Polo") and a man she knew as "BJ," the defendant in this case. The Cadillac continued down Cross Street; at some point it was blocked by a Honda Accord automobile parked in the middle of the narrow street. The victim, the driver of the Honda, had driven to the house of his friend, Jeremy Richardson, located on Cross Street. The victim had stopped his automobile in the middle of the street outside Richardson's house, sounded his horn, and was waiting for Richardson to join him.[4]

When the victim asked Hour to move his automobile so that

---

[4]Tran testified that, when she first saw the Honda parked in the middle of Cross Street, the driver was not inside, but a man (whom she later came to know was the victim) returned to the automobile "[f]ive, ten minutes" after

the victim could back his Honda into an empty parking space, Hour responded, "What does this nigger want?," or "What is this nigger saying?" Within seconds an argument commenced, and Hour, the defendant, Sokphann Chhim, Kimthy Un, Thol Leang, and Tran stepped out of the Cadillac, while the victim got out of his automobile.[5] The victim called for his friend, and Richardson emerged from his house.

After a heated exchange, Richardson pushed the defendant to the ground and a fight followed, during which Richardson and the victim were separated. The defendant, Hour, and Chhim attacked the victim, repeatedly punching him. During their attack, Tran testified, the defendant repeatedly stabbed the victim with a knife or a blade. After the victim fell to the ground, Hour continued to punch, kick, and drag him. The defendant, Hour, Un, Leang, and Tran then reentered Hour's automobile and drove to the defendant's house in Lynn, where Tran spent the night. While they were in the automobile, the defendant threw the knife out of the automobile. The defendant and Hour repeatedly told Tran "not to tell nobody."

The victim was taken to a hospital, where he was pronounced dead within one hour of his arrival. A medical examiner testified that the victim, who had multiple stab wounds, bruises, and abrasions, died of a stab wound to the right chest that punctured his lung and caused internal bleeding.[6]

b. *Tran's out-of-court identification of BJ.* Within a couple of days of the fight, Tran left Massachusetts and resumed her out-of-State schooling. Sometime later, Tran had a conversation with her school principal. This led to two meetings between Tran and two police officers, Trooper Alan Hunte and Detective Gerald Wayne from the Lowell police department, approximately two months after the victim's death. During the first meeting,

the automobile in which she was riding pulled up behind it. Richardson testified that the victim remained in the automobile and sounded his horn to announce his presence. In his ruling on the defendant's motion for a new trial, the judge, who also presided at the trial, adopted Richardson's account of the events.

[5]According to Richardson's testimony at trial, Tran remained in the automobile.

[6]There was much blood at the scene of the stabbing, but no matches were made to deoxyribonucleic acid taken from the defendant.

Tran identified as those present at the incident codefendant Hour, Chhim, Un, and Leang by selecting their photographs from color photographic arrays. She then circled and initialed on black and white copies of the arrays the photographs of the men she had selected. On the back of each photograph, respectively, Tran briefly summarized each man's actions during the melee.

At this first interview, Tran also provided the police with information concerning the participation of another man whom she identified as "BJ." This information led the police to commence a search of their records for a photograph of an individual called "BJ." Two days after the first interview with Tran, the police showed Tran another photographic array from which she selected one photograph. Tran said it was a photograph of BJ, the man who had stabbed the victim. The photograph selected by Tran had been taken in 1995, six years before the stabbing.

c. *Tran's in-court identification of the defendant.* During her grand jury testimony and again at trial, Tran testified that the photograph she had selected from the second photographic array was a photograph of BJ, the man she said had stabbed the victim. At trial Tran also made an in-court identification of the defendant: she testified that the defendant was the man she knew as BJ, and was the man who had stabbed the victim during the fight. She was the only witness to identify the defendant at trial.[7] The defendant's trial counsel did not object to the in-court identification. Tran testified that she knew BJ because she had "been hanging around with him" on approximately four occasions, sometimes for "the whole day." During his cross-examination of Tran, defense counsel directed the jury's attention to the link between Tran's in-court identification of the defendant and her earlier selection of the photograph from

---

[7]During a voir dire, a second Commonwealth witness, Phen Chhon, testified before the judge and out of the jury's presence that he had known someone by the name of Bol Choeum or BJ, that he had known BJ for some years, and that BJ had arrived at his house earlier on the day of the killing in a Cadillac and in the company of the codefendant and several other men. When testifying before the jury, however, Chhon did not identify the defendant as BJ, or as one of the men in the Cadillac who came to his house. Chhon did identify the codefendant, Hour. His testimony was to the effect that he could not remember how many men had arrived in the Cadillac.

the array. On redirect examination, Tran once again identified the defendant as "BJ," "the person [she] testified about stabbing and beating up" the victim.

After Tran had completed her testimony she left the court house and apparently returned to Maine, her home State. Several days later, at sidebar during the testimony of Trooper Hunte, defense counsel informed the judge (and the prosecutor for the first time) that the man in the photograph selected by Tran was in fact not the defendant, but an individual named Nak Choeurn. See note 3, *supra.* Counsel pointed out that the date of birth listed on the photograph was not the defendant's date of birth,[8] and stated that the defendant had been in State prison on the day the 1995 photograph had been taken. The photograph was admitted in evidence, as was the array from which Tran had selected it. Also admitted was the booking photograph taken of the defendant in September, 2001, on his arrest for the victim's murder. Through cross-examination of Trooper Hunte, defense counsel revealed to the jury the discrepancies between the photograph Tran had identified as BJ, and the defendant's booking photograph. Trooper Hunte testified, over the defendant's objection, that the defendant's alias was "BJ."

2. *Discussion.* The defense at trial was mistaken identification. The theory was that Tran had identified a photograph of Nak Choeurn as the stabber, had repeated her photographic identification of him to the grand jury and at trial, and that Tran had then mistakenly identified the defendant in court as the man who had stabbed the victim.[9] We begin our discussion with the defendant's claim on appeal that the judge's instructions to the jury improperly excluded from their consideration Tran's out-of-court photographic identification of Nak Choeurn as the

---

[8]The back of the 1995 photograph selected by Tran as a photograph of "BJ" contained the name "Nak Choeurn" with the birth date of February 4, 1976; height of five feet, three inches; and weight of 125 pounds. The back of the photograph of the defendant taken at the time of his arrest in 2001 for the murder of the victim indicated a birth date of April 7, 1972; height of five feet, one inch; and weight of 170 pounds.

[9]Defense counsel argued to the jury in his closing: Tran "was wrong once, twice, three times. She is mistaken. This is mistaken identification. That's not lying. She just doesn't know and she sees one person in the court room and picks him out."

victim's stabber. We then turn to his argument that he was deprived of effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution because of defense counsel's failure to object to allegedly erroneous jury instructions and his failure to exclude an in-court identification of the defendant by Tran.

a. *Jury instructions.* At trial, the black and white copies of the photographic arrays from which Tran had identified the defendant and others she said had participated in the victim's death, including the words she had written on the back of the photographs, were admitted in evidence.[10] The defendant objected to the admission of Tran's writings on the photographs. In response the judge gave limiting instructions, explaining that the writings on the photographs were being admitted not for the truth of the statements, but for identification purposes only.[11] In addition, as part of his final charge to the jury, the judge gave the following instructions regarding inconsistent statements by witnesses:

> "When you evaluate how reliable a witness's testimony is, you may take into account whether that witness made an earlier *statement* that differs in any significant way from his or her present testimony at trial. . . . The earlier *statement* is not itself positive evidence of any fact that is mentioned in it." (Emphasis added.)

---

[10]Certain sections of the writings on the backs of the other photographs, such as those suggesting gang affiliation, were redacted. Tran had not written on the back of the photographic array containing the defendant's photograph.

[11]The judge instructed as follows:

> "[L]et me explain to the jury that the written statements that the witness is reading on this exhibit and the prior two exhibits . . . , the language that she's reading is not being admitted for the truth of the *statements contained in that written statement.* It's solely being admitted because that's the nature of the way this witness identified these particular individuals that she allegedly saw at the time of the incident that she's described. But it's not being offered *for the truth of the statement contained therein.*" (Emphases added.)

The judge instructed the jury with respect to each reading of the writings by Tran. No such limiting instruction was required for the photographic array containing the defendant's photograph on which Tran had not written anything.

On appeal, the defendant argues that together these instructions created a substantial likelihood of a miscarriage of justice, and that trial counsel's failure to object to them deprived him of effective assistance of counsel. As to the inconsistent statement instructions, in particular, the defendant argues that Tran's selection of the photograph of Nak Choeurn was an inconsistent "statement" and that the judge's final instructions removed from the jury's substantive consideration Tran's previous "repeated identification" of Nak Choeurn as the stabber.[12]

The defendant is correct that prior identifications are admissible as substantive evidence. *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 432 (2005) (adopting "modern interpretation" of rule expressed in Fed. R. Evid. 801[d][1][C] and identically worded Proposed Mass. R. Evid. 801[d][1][C] to allow substantive use of pretrial identification evidence). Contrary to the defendant's assertion, however, the judge did not instruct the jury that Tran's prior identification of the man in the photograph as BJ could not be considered substantively. The judge's first set of instructions, given essentially contemporaneously with the testimony of various witnesses and at the request of defense counsel, specifically limited the jurors' use of *written* statements on the backs of the black and white photographic copies of the codefendant and others. See note 11, *supra*, and accompanying text.

As to the defendant's challenge to the judge's final instruction concerning inconsistent witness statements, the argument that Tran's photographic identification of Nak Choeurn was a "statement" excluded from the jury's substantive consideration is without merit. The judge did not at any point refer to Tran's photographic identification of "BJ" as a "statement." Rather, he distinguished between the photographs and the written statements on the back of the photographs, instructing the jury several times that they were not to consider substantively the "written statements" on the backs of the photographs identified by witnesses. See note 11, *supra*. When she selected the

---

[12]Specifically, the defendant argues that the judge erroneously instructed that Tran's prior identification of the perpetrator of this crime as Nak Choeurn, not Bol Choeurn, "could not be received as substantive evidence of Bol [Choeurn]'s innocence."

photograph of BJ from the photographic array, Tran did not write anything on the back of the photograph, so nothing of Tran's identification of "BJ" or Nak Choeurn was excluded from the jury's consideration. Stated differently, the judge did not limit in any respect the jury's substantive consideration of Tran's out-of-court identification of the individual called Nak Choeurn.

The judge did in fact give final instructions on mistaken identification prior to deliberation:

> "You may take into account whether a witness ever tried and failed to make an identification of a defendant or made an identification that was inconsistent with the identification that such witness made at trial. . . . If, after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty. In deciding whether or not to believe a witness who identifies the defendant as the perpetrator, remember that you must not only consider whether the witness is trying to tell you the truth or is lying. You must also decide whether that witness's identification is accurate and instead may well have been an honest good faith identification that may nonetheless have been mistaken."

Providing these instructions to the jury comported with our holding in *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983), that "[f]airness to a defendant compels the judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it."[13]

Contrary to the defendant's argument, Tran never identified the victim's killer as Nak Choeurn. Rather, she told Trooper Hunte that a man named "BJ" had stabbed the victim, and she selected from an array a 1995 photograph that she said was a

---

[13]The judge's instructions to the jury were substantially similar to those we have approved where a defendant raises the issue of mistaken identification, and were sufficient to mitigate any suggestiveness inherent in an in-court identification. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979) (Appendix), as modified in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640-641 (1993) (Appendix), and *Commonwealth* v. *Santoli*, 424 Mass. 837, 845 (1997).

photograph of "BJ." Tran was consistent that "BJ," a man she knew, and the man she identified at trial, was the perpetrator. To the extent that the jury considered that Tran had mistakenly identified either the defendant they observed in court or the man she selected from the photographic array, they were correctly instructed that they had to be satisfied beyond a reasonable doubt that the defendant stabbed the victim.

b. *Ineffective assistance of counsel.* "In evaluating a claim of ineffective assistance of counsel in a case of murder in the first degree, we begin by determining whether there was a serious failure by trial counsel. If so, then we determine whether the failure resulted in a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Harbin*, 435 Mass. 654, 656 (2002). See *Commonwealth* v. *Freeman*, 430 Mass. 111, 120 (1999) (in capital cases, we review ineffective assistance of counsel claim for substantial likelihood of miscarriage of justice, a standard more favorable to defendant); *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992) (to prevail on ineffective assistance of counsel claim, defendant must demonstrate that "there was an error in the course of the trial [that was] likely to have influenced the jury's conclusion"). As there was no error in the judge's various instructions to the jury concerning Tran's out-of-court identification, or his instruction on mistaken identification, counsel was not ineffective for failing to object to those instructions. See *Commonwealth* v. *Wright, supra* (error in course of trial is prerequisite to successful ineffective assistance claim).

On appeal, the defendant also argues that Tran's in-court identification of him as "BJ," the man who stabbed the victim, was "so suggestive" in the circumstances "as to be inherently unreliable," and that trial counsel's failure to move to strike the in-court identification deprived the defendant of effective assistance of counsel. We again begin by determining whether trial counsel erred in any respect. See *Commonwealth* v. *Harbin, supra*; *Commonwealth* v. *Wright, supra*.

We have long recognized that "a degree of suggestiveness inheres in any identification of a suspect who is isolated in a court room." *Commonwealth* v. *Napolitano*, 378 Mass. 599, 604 (1979). That "does not, in itself, render the identification

impermissibly suggestive." *Id.* Rather, an in-court identification is excluded if it is tainted by an out-of-court confrontation arranged by the Commonwealth that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). Although the defendant casts serious doubt that Tran had previously selected a photograph of him as "BJ," he makes no claim that Tran's earlier photographic identification of the man she believed was "BJ" was itself a suggestive confrontation in any respect.[14] Rather, the defendant's argument rests on a theory that he was mistakenly identified by Tran as the stabber. Had trial counsel objected to Tran's in-court identification of the defendant, it is unlikely that her identification would have been struck. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983) (no error in declining to file motion with "minimal chance of success"). As the judge noted in rejecting this claim, "the risk of mistaken in-court identification was minimal given the fact that Tran knew and had spent time with BJ prior to the night that [the victim] was killed." He further noted that the jury "could have further credited Tran's testimony based on the corroboration of many of the details of her story by other evidence presented at trial." Defense counsel posited that Tran was not "lying," see note 9, *supra*, but that once she saw the defendant sitting at counsel table she simply made a mistake about whether he was the perpetrator.

> "[Where] [t]here is no indication that [an] identification was the result of impermissibly suggestive procedures or that there was any defect in the identification process[,] . . . it is highly unlikely that a motion to suppress would have succeeded. It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success."

*Commonwealth* v. *Conceicao, supra.*

In this case, it was likely a tactical decision by trial counsel not to file a motion to preclude Tran's in-court identification of

---

[14]Such a claim would, in any event, be difficult to sustain. It was Tran's statement to the police that BJ had participated in the victim's killing that caused the police to assemble a new array containing a photograph, among others, of the man the police believed was BJ.

the defendant.[15] As described earlier, defense counsel waited until several days after Tran had finished her testimony and left the State before confronting a police witness with Tran's erroneous identification of the photograph as that of the defendant. Had counsel moved to preclude Tran's in-court identification of BJ, he would likely have had to reveal to the Commonwealth the error in Tran's pretrial photographic identification. This would have permitted the Commonwealth to examine Tran about the issue, potentially minimizing the impact of the inconsistency in front of the jury. By waiting to do so until he cross-examined Trooper Hunte, defense counsel set up for maximum impact on the jury the unexpected revelation that the photograph selected by Tran was not a photograph of the defendant. In these circumstances, trial counsel's actions were purposeful and consistent with a reasonable strategy. Simply because the strategy was unsuccessful does not mean it was "manifestly unreasonable." *Commonwealth* v. *Conceicao, supra* at 265. See *Commonwealth* v. *Sena,* 441 Mass. 822, 825-826 (2004), and cases cited (proper to defer to trial counsel's tactical decisions unless manifestly unreasonable).

c. *The prosecutor's closing statement.* In his unsuccessful posttrial motion to set aside the verdict or, in the alternative, for a new trial, the defendant asserted that the prosecutor's closing argument was improper in several respects. He claimed that the prosecutor misstated evidence, appealed to the jury's sympathy, and vouched for the credibility of Tran, the Commonwealth's

[15]Defense counsel's approach to the identification testimony throughout the trial, including his cross-examination of Tran, demonstrates that he was well aware of its importance. Several days after Tran testified and in anticipation of a different witness's testimony, defense counsel moved to preclude "an in-court identification of the defendant from any witness that has not previously made such an identification" as "inherently and unnecessarily suggestive." After voir dire of that witness, Phen Chhon, see note 7, *supra,* the judge denied the defendant's motion, although the witness ultimately failed to identify him. Defense counsel declined the judge's offer "to attempt to create a less suggestive environment for an in-court identification" because he did not "think that there is anything we could do in these circumstances that would diminish the suggestiveness." Moreover, at the close of the Commonwealth's case, defense counsel moved for a required finding of not guilty based on "the identification issue," including his assertion that Tran's in-court identification of the defendant "is diminished by the circumstances surrounding that identification."

principal witness. On appeal, the defendant maintains only that the prosecutor improperly argued facts not in evidence in order to bolster Tran's credibility, and that the judge erred in declining to give a specific limiting instruction on the matter.

It appears that the prosecutor's closing argument to which the defendant objects includes the following comments about Tran:

> "Is [Tran's] story inherently believable, does it make sense? Why come in here almost two years later when you're married with a child on the way living a great distance away and come in and say these things happened unless it's the truth. Remember, she went to the police, the police didn't go to her. That's important. No one sought her out. She was gone [from Massachusetts]. She went to the police."

The defendant characterizes such comments as the prosecutor's vouching for Tran as a reliable witness because he was suggesting to the jury that Tran had volunteered to testify at trial. As there was no evidence whether Tran testified under compulsory process or fear of compulsory process, the defendant suggests that the prosecutor argued facts not in evidence.

We consider any challenged statements made during closing arguments "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial." *Commonwealth* v. *Passley*, 428 Mass. 832, 835 (1999), quoting *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992). The credibility of Tran's identification of the defendant as the man who inflicted the lethal wounds was key to his defense. And where credibility is at issue, "it is certainly proper for counsel to argue from the evidence why a witness should be believed." *Commonwealth* v. *Thomas*, 401 Mass. 109, 116 (1987). See *Commonwealth* v. *Rolon*, 438 Mass. 808, 816 (2003) ("It is not improper vouching for the prosecutor to point to reasons why a witness's testimony, or portions of a witness's testimony, should logically be believed").

In this case the prosecutor did not state that Tran had volunteered to testify at trial, but his words "[s]he was gone" and "[n]o one sought her out" could arguably have been susceptible

of this interpretation. At worst the prosecutor's statements were ambiguous: in context the statements could also have referred (accurately) to Tran's initial contact with the police. We discourage the use of ambiguous statements in the course of closing arguments. *Commonwealth* v. *Raymond,* 424 Mass. 382, 391-392 (1997), quoting *Commonwealth* v. *Thomas, supra* at 115. But " 'unartful isolated instances' are generally not enough to lead the jury to improper inferences drawn from presumed personal knowledge of the prosecutor." *Commonwealth* v. *Raymond, supra.* In this case, even assuming that the jury could have concluded that Tran had returned voluntarily to Massachusetts to testify at the defendant's trial, any conceivable improper inference was isolated and not repeated by the prosecutor.

We recognize here, as we have before, "that closing argument is identified as argument, the jury understands that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument." *Commonwealth* v. *Kozec,* 399 Mass. 514, 517 (1987). Here, the judge's final instructions to the jury immediately before they begin their deliberations were as follows:

> "Our rules prohibit attorneys from making certain types of arguments in an effort to persuade you to reach a certain result or to favor or discredit either party. For example, *the attorneys are not permitted to refer to facts that are not in evidence in this case.* If, based on your memory and understanding of the evidence, a lawyer did this, you should disregard that comment. The attorneys are not permitted to express their personal belief in the credibility or lack of credibility of any witness who testified in this case. That determination is entirely for you to make. If a lawyer made such a comment, you should disregard that comment." (Emphasis added.)

These instructions were sufficient to cure any ambiguity in the prosecutor's closing argument. See *Commonwealth* v. *Kozec, supra* at 522-523 (if judge is in doubt about propriety of prosecutor's closing argument, he may take "a neutral posture and advise[] the jury that, if their memory of the evidence did not support the prosecutor's argument, they should disregard

it"). See also *Commonwealth* v. *Raymond, supra* at 392 ("We believe this unambiguous charge to the jury that they must determine credibility on their own mitigated any prejudice that might be derived from the prosecutor's statement"). The prosecutor's closing argument regarding Tran's testimony did not create a substantial likelihood of a miscarriage of justice, particularly where, as here, the remarks were "directed at [Tran]'s believability, an issue raised by the defense and contested by both sides." *Commonwealth* v. *Freeman,* 430 Mass. 111, 119 (1999).

3. *Relief under G. L. c. 278, § 33E.* We have reviewed the entire record pursuant to our responsibilities under G. L. c. 278, § 33E, and see no reason to exercise our extraordinary power to reverse the verdict or reduce the conviction. It was for the jury to assess the credibility of Tran and for the jury to assess her identification of the defendant as the man who had inflicted the lethal injuries on the victim. They could observe Tran, could observe the defendant, could compare the similarity (if any) between the 1995 photograph selected by Tran and the defendant, and could draw their own conclusion about Tran's selection of that photograph and her later identification of the defendant in court as the stabber. It is not for us to resolve any questions of credibility.

*Judgment affirmed.*

*Order denying posttrial motion affirmed.*